**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00165

FEDERAL TRADE COMMISSION, and
STATE OF COLORADO, *ex rel*. PHILIP J. WEISER, ATTORNEY GENERAL,

      Plaintiffs,

v.

GREYSTAR REAL ESTATE PARTNERS, LLC, d/b/a "Greystar," a limited liability company;
GREP GENERAL PARTNER, LLC, d/b/a "Greystar," a limited liability company;
GREYSTAR MANAGEMENT SERVICES, LLC, d/b/a "Greystar," a limited liability company;
GREYSTAR RS NATIONAL, LLC, d/b/a "Greystar," a limited liability company;
GREYSTAR CALIFORNIA, INC., d/b/a "Greystar," a corporation; and
GREP SOUTHWEST, LLC, d/b/a "Greystar," a limited liability company,

      Defendants.

---

 PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD .......................................................................................... 2

ARGUMENT ...................................................................................................... 3

    I.   The Court Has Personal Jurisdiction Over Defendants ......................................... 3

    II.  The Complaint Provides Proper Notice of the Claims and Conduct at Issue ........ 6

    III.  The Complaint Sufficiently Alleges That Defendants' Rental Advertisements Are Deceptive (Count I) ............................................................................................... 9

    IV.  The Complaint Sufficiently Alleges a Violation of the GLB Act (Count II) ........... 13

       A.   The Plain Text of the GLB Act Supports Its Application in This Case ............. 14

       B.   Congress Granted the FTC the Authority to Enforce the GLB Act According to Its Terms ................................................................................................. 20

       C.   The Complaint Properly Alleges a Claim for Relief Under the GLB Act .......... 24

    V.  The Complaint Properly Alleges That Defendants Violated the CCPA (Counts III and IV) ................................................................................................................ 26

CONCLUSION ................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Abdi v. Wray*, 942 F.3d 1019 (10th Cir. 2019) .................................................................. 3

*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210 (10th Cir. 2007).......................................... 2

*AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021)................................... 24, 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 3

*Beneficial Corp. v. FTC*, 542 F.2d 611 (3d Cir. 1976) .................................................. 12

*Bhd. of R.R. Trainmen v. Balt. & Ohio R. R.*, 331 U.S. 519 (1947) .............................. 18

*Bostock v. Clayton Cty.*, 590 U.S. 644 (2020) .............................................................. 18

*Briskin v. Shopify, Inc.*, No. 22-15815, 2025 WL 1154075 (9th Cir. Apr. 21, 2025)......... 9

*Brown v. City of Tulsa*, 124 F.4th 1251 (10th Cir. 2025)...................................... 3, 9, 13

*Carrado v. Daimler AG*, No. 17-CV-3080-WJM-SKC, 2018 WL 4565562 (D. Colo. Sept.
    24, 2018) .................................................................................................................... 8

*David v. City & Cnty. of Denver*, 101 F.3d 1344 (10th Cir.1996) .................................... 2

*Dr. W.B. Caldwell, Inc. v. FTC*, 111 F.2d 889 (7th Cir. 1940)....................................... 33

*Dubin v. United States*, 599 U.S. 110 (2023) ............................................................... 18

*FTC v. Amazon.com, Inc.,* 735 F. Supp. 3d 1297 (W.D. Wash. 2024*)* .......................... 27

*FTC v. Amazon.com, Inc.,* No. 2:23-cv-00932-JHC, 2025 WL 592998 (W.D. Wash.,
    Feb. 24, 2025) ......................................................................................................... 29

*FTC v. Ams. for Fin. Reform*, 720 F. App'x 380 (9th Cir. 2017)...................................... 4

*FTC v. Celsius Network Inc.*, No. 23CV6009 (DLC), 2023 WL 8603064 (S.D.N.Y. Dec.
    12, 2023) .................................................................................................................. 20

*FTC v. Credit Bureau Ctr., LLC*, 81 F.4th 710 (7th Cir. 2024) ..................................... 25

*FTC v. Doxo, Inc.*, No. C24-0569 TSZ, 2025 WL 887311 (W.D. Wash. Mar. 21, 2025)
    ........................................................................................................................... 19, 20

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ..................................... 13

*FTC v. Elegant Sols., Inc.*, No. 20-55766, 2022 WL 2072735 (9th Cir. June 9, 2022) .. 26

*FTC v. Figgie Int'l*, 994 F.2d 595 (9th Cir. 1993) ................................................... 30, 31

*FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005)..................... 8, 14, 30

*FTC v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803, 838 (D. Ariz. 2024)................ 8

*FTC v. J.K. Publ'ns, Inc.*, 99 F.Supp.2d 1176 (C.D.Cal. 2000)...................................... 10

*FTC v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) (en banc) .................................. 30, 31

*FTC v. LoanPointe, LLC*, 525 F. App'x 696 (10th Cir. 2013) ........................................ 12

*FTC v. LoanPointe, LLC*, No. 2:10-CV-225DAK, 2011 WL 4348304 (D. Utah Sept. 16,
    2011) ............................................................................................................. 10, 11, 12

*FTC v. Nudge, LLC*, No. 2:19-CV-867-DBB-DAO, 2022 WL 2132695 (D. Utah June 14,
    2022) ............................................................................................................. 15, 30, 31

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994) .................................................. 12

*FTC v. RCG Advances, LLC,* 695 F. Supp. 3d 368 (S.D.N.Y. 2023)................. 19, 20, 21

*FTC v. Voyager Digital LLC*, No. 23-cv-8690 (S.D.N.Y. May 16, 2024.......................... 20

*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988) ................ 12

*FTC v. Your Yellow Book, Inc.*, No. CIV-14-786-D, 2014 WL 4187012 (W.D. Okla. Aug.
    21, 2014) .................................................................................................................. 16

*Fulton v. Philadelphia*, 593 U.S. 522 (2021) .................................................................... 18

*GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655 (10th Cir. 2020) ........... 5

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ............................................................. 9

*Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715 JLS (AHG), 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ........................................................................................................................ 15

*Health Grades, Inc. v. Decatur Mem'l Hosp.*, 190 F. App'x 586 (10th Cir. 2006) ............ 7

*In re Cliffdale Assoc.*, 103 F.T.C. 110 (1984) .................................................................. 11

*Klein v. Cornelius*, 786 F.3d 1310 (10th Cir. 2015) ........................................... 4, 5, 6, 7

*Loughrin v. United States*, 573 U.S. 351 (2014) ................................................ 21, 22, 24

*Mann v. Boatright*, 477 F.3d 1140 (10th Cir. 2007) ........................................................ 8

*May Dep't Stores v. State ex rel Woodward*, 863 P.2d 967 (Colo. 1993) .......... 33, 34, 35

*Nelson v. United States*, 40 F.4th 1105 (10th Cir. 2022) ............................................... 18

*New Mexico v. Dep't of Interior*, 854 F.3d 1207 (10th Cir. 2017) ................................... 26

*Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013) ................................................. 5

*Novartis Corp. v. FTC.*, 223 F.3d 783 (D.C. Cir. 2000) .................................................. 11

*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000) ............. 4, 5, 6

*People ex rel Dunbar v. Gym of America*, 177 Colo. 97, 493 P.2d 660 (Colo. 1972) .... 33

*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020) ................ 3

*Removatron Intern. Corp. v. FTC*, 884 F.2d 1489 (1st Cir.1989) ................................... 16

*Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997)....
........................................................................................................................... 5, 6

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining*, 62 P.3d 142 (Colo. 2003) ... 32

*Robbins v. Okla. ex rel. Dept. of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008) .......... 8

*State ex rel. Coffman v. Castle L. Grp., LLC*, 375 P.3d 128 (Colo. 2016) ..................... 34

*United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002) ............................................. 4

*Util. Air Regul. Grp. v. EPA ("UARG"),* 573 U.S. 302 (2014) ........................................ 27

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277 (10th Cir. 2019) ................................... 3

*Wenz v. Memery Crystal*, 55 F.3d 1503 (10th Cir.1995) ................................................. 2


**Statutes**

15 U.S.C. § 45 ........................................................................................................ 12, 24

15 U.S.C. § 53(b) ..................................................................................................... 4, 5, 6

15 U.S.C. § 57b .................................................................................................. 17, 24, 25

15 U.S.C. § 57b(b) ......................................................................................................... 17

15 U.S.C. § 1692l ............................................................................................... 17, 24, 25

15 U.S.C. § 6821(a)(1) .................................................................................................. 22

15 U.S.C. § 6821(a)(2) ............................................................................................passim

15 U.S.C. § 6822(a) .......................................................................................... 17, 24, 25, 27

18 U.S.C. § 1344 ........................................................................................................... 22

Colo. Rev. Stat. § 6-1-102(6) ........................................................................................ 11

Colo. Rev. Stat. § 6-1-105(1)(l) ..................................................................................... 32

Colo. Rev. Stat. § 6-1-105(1)(rrr) .................................................................................. 32

**Rules**

Fed. R. Civ. P. 4(k)(2) ................................................................................. 4
Fed. R. Civ. P. 8(a)(2) ................................................................................. 6
Fed. R. Civ. P. 12(b)(6) ............................................................................. 10
Fed. R. Civ. P. 12(h)(1) ............................................................................... 5
Fed. R. Evid. 201 ........................................................................................ 8

**Regulations**

16 C.F.R. § 464.1 ..................................................................................... 22
16 C.F.R. § 464.2(b) ................................................................................. 23
16 C.F.R. § 464.2(c) ................................................................................. 23
16 C.F.R. § 464.3 ..................................................................................... 23
*Trade Regulation Rule on Unfair or Deceptive Fees*, 90 Fed. Reg. 2066 (FTC Jan. 10,
2025) (amending 16 C.F.R. §§ 464.1–5) ..................................................... 22, 23, 24

**Other Authorities**

1983 FTC Policy Statement on Deception .................................................... 9
H.R. Rep. No. 106-434 (1999) .................................................................. 16

## INTRODUCTION

Plaintiff the Federal Trade Commission ("FTC") and Plaintiff the State of

Colorado, *ex rel.* Philip J. Weiser, Attorney General ("Attorney General") (collectively,

"Plaintiffs") allege that Defendants Greystar Real Estate Partners, LLC ("GREP"); GREP

General Partner, LLC ("GREP GP"); Greystar Management Services, LLC ("GS MS");

Greystar RS National, LLC ("GS RS"); Greystar California, Inc. ("GS CA"); and GREP

Southwest, LLC ("GS SW") (collectively, "Defendants") misrepresent the price of rental

units in violation of the Federal Trade Commission Act ("FTC Act"), the Gramm-Leach-

Bliley Act ("GLB Act"), and the Colorado Consumer Protection Act ("CCPA").

As of January 1, 2024, Defendants managed more than 800,000 rental units

nationwide. Complaint for Permanent Injunction, Monetary Judgment, Civil Penalty

Judgment, and Other Relief, ECF No. 1 ("Compl.") ¶ 22. When Defendants manage a

rental property, they advertise available units and bill tenants. *Id*. ¶¶ 27–28. Defendants

also advise owners about which mandatory services to require, and how much to

charge tenants for those services in addition to the advertised rent. *Id*. ¶ 39. Tenants at

properties managed by Defendants thus wind up paying additional monthly charges for

things like pest control, trash, package delivery, and even administrative fees to receive

their utility bills. *Id*. ¶ 35. Defendants do not include these fixed, mandatory, monthly

fees in the advertised monthly price, even where the fees increase that monthly price by

hundreds of dollars. *Id*. ¶ 33. Since 2019, Defendants have collected hundreds of

millions of dollars in fees that were deceptively excluded from the price advertised to

tenants. *Id*. ¶ 3.

On January 16, 2025, Plaintiffs filed a four-count Complaint for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Section 521 of the GLB Act, 15 U.S.C. § 6821(a)(2); and Section 105 of the CCPA, Col. Rev. Stat. § 6-1-105. *See* Compl. ¶¶ 120–38. The FTC and the Attorney General are seeking injunctive relief to protect consumers in the future, as well as consumer redress, and the Attorney General is seeking civil penalties for Defendants' past violations. *Id*.

Plaintiffs oppose Defendants' April 16, 2025, Motion to Dismiss, ECF. No. 34 ("Motion" or "Mot."), because Defendants misread or simply ignore large swaths of the Complaint, sidestep the applicable case law, and attempt to write limitations into the GLB Act that multiple courts have rejected. For all these reasons, and as described further herein, the Court should deny Defendants' Motion in its entirety.

## **LEGAL STANDARD**

When reviewing a motion to dismiss, the Court must accept all the "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)). At the motion to dismiss stage, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is a "low bar for surviving a motion to

dismiss." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir.

2020). When "assessing whether a plaintiff has stated a claim for relief, a court must

restrict its review to only the 'allegations within the four corners of the complaint,' and

cannot consider other pleadings or external allegations." *Brown v. City of Tulsa*, 124

F.4th 1251, 1263–64 (10th Cir. 2025) (quoting *Waller v. City & Cnty. of Denver*, 932

F.3d 1277, 1286 n.1 (10th Cir. 2019)).

## ARGUMENT

Defendants' Motion should be denied for the reasons set forth below.

Specifically, the Court has jurisdiction over each Defendant, the Complaint provides

Defendants sufficient notice of the claims, Defendants' false price representations

violated the FTC Act, Defendants violated the GLB Act by causing the disclosure of

consumer financial information with those false representations, and the CCPA counts

are sufficiently pled.

## I.     The Court Has Personal Jurisdiction Over Defendants

Under binding Tenth Circuit precedent, this Court has personal jurisdiction over

each Defendant.[1] When a statute provides for nationwide service of process, the

---

[1] Because the Court can exercise jurisdiction over each Defendant based on the FTC Act, the Court also may exercise jurisdiction over each Defendant for the Attorney General's supplemental state claims. *See Klein v. Cornelius*, 786 F.3d 1310, 1319 (10th Cir. 2015) (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002)).

plaintiff's initial burden to establish personal jurisdiction is satisfied. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (holding that the personal jurisdiction test differs for statutes like ERISA that authorize nationwide service of process). Jurisdiction is proper here because the FTC Act provides for nationwide service of process. 15 U.S.C. § 53(b)(2) ("process may be served on any [defendant] wherever it may be found"); *FTC v. Ams. for Fin. Reform*, 720 F. App'x 380, 383 (9th Cir. 2017) (determining 15 U.S.C. § 53(b) authorizes nationwide service).

In a federal question case with nationwide service of process, the defendant bears the burden to establish that the "chosen forum will make litigation . . . gravely difficult and inconvenient or, in other words, . . . burdens the defendant with constitutionally significant inconvenience." *Klein*, 786 F.3d at 1318 (quoting *Peay*, 205 F.3d at 1212) (internal quotation marks omitted).[2] Defendants have not met their burden, and instead cite an incorrect jurisdictional test.[3] *See* Mot. at 26–28.

Courts in the Tenth Circuit consider five non-exclusive factors to determine if the

---

[2] "[O]nly in highly unusual cases will inconvenience rise to a level of constitutional concern." *Peay*, 205 F.3d at 1212–13 (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997)).

[3] Defendants' proposed test comes from an unpublished opinion, *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts,* 808 F. App'x 655, 663 (10th Cir. 2020). Mot. at 27. *GCIU*, however*,* deals with service under Federal Rule of Civil Procedure 4(k)(2), which only applies when a foreign defendant is not "subject to the jurisdiction of any state's court of general jurisdiction." 808 Fed. App'x at 661 (quoting Fed. R. Civ. P. 4(k)(2)). Defendants cannot assert that its entities are not subject to general jurisdiction in any state courts. *See* Mot. at 26–28; Compl. ¶¶ 14–19. *GCIU* then quotes *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013), for its personal jurisdiction test, *GCIU*, 808 Fed. App'x at 663, but *Newsome* considers personal jurisdiction under state claims, rather than a federal statute authorizing nationwide service, *see* 722 F.3d at 1264–65, which is a decisive factor in *Peay* and in this case.

defendant has met its burden: (1) contact with the forum, (2) the inconvenience of litigating in the jurisdiction, (3) judicial economy, (4) the site of discovery proceedings, and (5) the defendant's activities and the impact beyond its state's borders. *Klein,* 786 F.3d at 1318.[4] As to the first factor, the Complaint alleges that each Defendant, individually and as a group, has "advertised . . . and offered . . . residential units to consumers throughout the United States," including in Colorado. Compl. ¶¶ 14–20, 114–18.[5]

The third and fifth factors of the *Peay* analysis, judicial economy and the impact of Defendants' activities beyond its state's borders, also support asserting jurisdiction in this case. *See Peay*, 205 F.3d at 1213 (noting that "courts should examine the federal policies advanced by the statute") (quoting *Republic of Pan.*, 119 F.3d at 948).[6] It is a waste of judicial resources to require multiple courts to hear multiple cases between the FTC and Defendants addressing identical conduct.[7] Further, allowing some entities to escape a potential remedial order in this case ignores the allegations that each Defendant has made the same type of false representations to consumers throughout the nation. *See* Compl. ¶¶ 14–20, 43, 60, 67, 72, 115–18. Thus, the third and fifth

---

[4] Defendants do not challenge personal jurisdiction for GREP SW and GS MS and therefore waive the argument. Mot. at 26; Fed. R. Civ. P. 12(h)(1).

[5] Defendants' advertising reaches consumers in Colorado, a contact that far exceeds the insignificant contact (receiving one payment that originated in the district) that still supported finding jurisdiction in *Klein. See* 786 F.3d at 1318–19.

[6] The FTC Act provides guidance, noting that courts "may . . . cause such other [entity] to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought." 15 U.S.C. § 53(b)(2).

[7] To illustrate, under Defendants' interpretation of the facts alleged in the Complaint, Mot. at 27–28, the FTC would be forced to file a nearly identical suit in California against GS CA.

factors militate towards finding personal jurisdiction.

As to the second factor, "inconvenience," *see Klein*, 786 F.3d at 1318,

Defendants have not argued that they would experience any inconvenience litigating

before this Court. *See* Mot. at 26–28. Given Defendants' extensive presence in

Colorado, it is unlikely that they would be able to provide any compelling arguments

establishing inconvenience. Compl. ¶¶ 42, 79, 88, 104. Defendants also ignored the

fourth factor—the site of discovery proceedings. *See Klein*, 786 F.3d at 1318.

Defendants employ standard advertising procedures nationwide, Compl. ¶ 115, which

means Colorado is a reasonable site for determining the identical discovery questions

underlying its national advertising practices and policies. In sum, Defendants failed to

meet their burden, and the Court should find that it has jurisdiction over all Defendants.[8]

## II.     The Complaint Provides Proper Notice of the Claims and Conduct at Issue

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure,[9] the Complaint must

include a "short and plain statement" providing notice of the claims. *Mann v. Boatright*,

477 F.3d 1140, 1148 (10th Cir. 2007). The required specificity for facts alleged in a

---

[8] Plaintiffs alternatively request jurisdictional discovery if the Court finds that Defendants may have met their burden. *See Health Grades, Inc. v. Decatur Mem'l Hosp*., 190 F. App'x 586, 589 (10th Cir. 2006) ("While the district court has broad discretion in determining whether to permit jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary.").

[9] "A § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." *FTC v. Freecom Commc'ns, Inc*., 401 F.3d 1192, 1203 n.7 (10th Cir. 2005). In the event that Federal Rule of Civil Procedure 9(b) applies to any claims in the Complaint, the Complaint is still sufficiently particular in alleging that all related corporate entities made the representations. *See FTC v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803, 838 (D. Ariz. 2024).

complaint depends on the context of the conduct at issue, particularly if several natural

persons are named as defendants. *Robbins v. Okla. ex rel. Dept. of Human Servs.*, 519

F.3d 1242, 1248–50 (10th Cir. 2008) (determining that group pleading was

impermissible where individual persons' actions in 18 U.SC. § 1983 action were

"*entirely different in character*") (emphasis added); *see also Carrado v. Daimler AG,* No.

17-CV-3080-WJM-SKC, 2018 WL 4565562, at *4 (D. Colo. Sept. 24, 2018) (finding that

common allegations against wholly or partially owned subsidiaries were fair); *Briskin v.*

*Shopify, Inc.*, No. 22-15815, 2025 WL 1154075, at *16 (9th Cir. Apr. 21, 2025) (holding

that the "course of conduct jointly pursued by three closely related corporate

defendants" satisfied the pleading rule).

The Complaint alleges that each Defendant has directly advertised rental units to

consumers, and that Defendants all follow uniform advertising policies and procedures.

*See* Compl. ¶¶ 14–20, 24, 114–15. Further, each Defendant is part of a complex web of

corporate ownership that includes parent entities and their direct and indirect

subsidiaries. *Id*. ¶¶ 14–20, 114. Specifically, the parent entities GREP and GREP GP

own, and operate together with, GS MS, GS RS, GS CA, and GREP SW, which are

direct and indirect subsidiaries. *See id*. ¶¶ 14–19, Exhibit A. Despite Defendants'

assertion to the contrary, *see* Mot. at 25, the Complaint alleges that the named entities

use consolidated enterprise services for a plethora of functions, including advertising

technology, and that Defendants employ executives who simultaneously serve in

multiple roles across the entities. *See* Compl. ¶¶ 20,114–15.[10] In marketing materials, Defendants highlight their presence across the United States, including their numerous regional offices, and, on Greystar.com, Defendants advertise their available rental units nationwide. *Id*. ¶¶ 69-70, 116–19. Although the regional offices enter into agreements to manage specific properties, *see id*. ¶¶ 18–19, the parent and subsidiary entities work together to operate the property management business, including its nationwide advertising. *Id*. ¶¶ 114–18.

Courts have also developed the common enterprise doctrine in FTC cases to cover situations where, as here, the business operates through a "maze of interrelated companies." *FTC v. LoanPointe, LLC*, No. 2:10-CV-225DAK, 2011 WL 4348304, at *10 (D. Utah Sept. 15, 2011) (quoting *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000)), *aff'd*, 525 F. App'x 696 (10th Cir. 2013). The FTC has alleged that Defendants operate as a common enterprise, Compl. ¶ 20, and liability for deceptive practices of one entity can properly be ascribed to other entities within the common enterprise. *See LoanPointe*, 2011 WL 4348304, at *10.

Regarding Colorado law, Defendants' argument that Colorado courts have never

---

[10] To the extent that Defendants' argument improperly relies on facts outside the Complaint regarding the specific duties or actions of certain corporate entities, Mot. at 26–27, the Court should not take notice of those proposed facts. *See City of Tulsa*, 124 F.4th at 1263–64. Defendants' proposed facts do not meet the standard for the court to take judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (noting that courts take judicial notice of their own records); Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

extended the common enterprise doctrine to the CCPA is misplaced. Mot. at 26. The

CCPA itself is broad and already encompasses the concept of a common enterprise in

statute. "Person" is defined to include "an individual, corporation, business trust, estate,

trust, partnership, unincorporated association, or *two or more thereof having a joint or*

*common interest*, or any other legal or commercial entity." Colo. Rev. Stat. § 6-1-102(6)

(emphasis added). As outlined above, Defendants have significant joint or common

interests and are thus properly named in the Complaint.

   Because Defendants are a network of subsidiary and parent business entities

that engage in a joint course of conduct, the Complaint adequately alleges violations of

the FTC Act, the GLB Act, and the CCPA against each of the named entities.

### III.    The Complaint Sufficiently Alleges That Defendants' Rental Advertisements Are Deceptive (Count I)

   Count I properly alleges that Defendants violate the FTC Act by misrepresenting

the monthly price that consumers must pay to rent a unit. Compl. ¶¶ 122–24. As

Defendants note, the FTC Act prohibits practices involving a material[11]

"misrepresentation . . . likely to mislead consumers acting reasonably under the

circumstances." *FTC v. LoanPointe, LLC,* 525 F. App'x 696, 700 (10th Cir. 2013) (citing

---

[11] Defendants do not address materiality, which can be presumed here because
Defendants' rental prices are express claims and they relate to price. *See Novartis
Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000) (quoting 1983 FTC Policy Statement
on Deception, appended to *In re Cliffdale Assoc.*, 103 F.T.C. 110, 174 (1984));
*LoanPointe*, 2011 WL 4348304, at *4 (explaining express claims are presumed
material). Further, even without a presumption, fees that can raise the price by
hundreds of dollars a month are clearly important and likely to affect consumer decision-
making. Compl. ¶¶ 33, 90, 94; *LoanPointe*, 2011 WL 4348304, at *5 (facts likely to
affect consumer decision making are material).

*FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994)); *see* 15 U.S.C. § 45.

Under the FTC Act, the "FTC does not need to prove actual deception, only the likelihood that a consumer . . . would be deceived." *LoanPointe*, 525 F. App'x at 701. However, "evidence that some customers actually misunderstood the thrust of the message is significant support" for finding that the practice is likely to mislead consumers." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1030 (7th Cir. 1988) (quoting *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976). In this case, consumer complaints, which Defendants received, show that people were deceived by Defendants' claims about the price of rental units. Compl. ¶¶ 102–05. For example, one Colorado consumer found that Greystar "advertise[ed] 1400 a month for a 2 bed[,] what they [don't] tell you is that there is about 200 extra in fees making it more like 1600." *Id*. ¶ 104(f). Another Colorado consumer complained about "the exorbitant fees and hidden charges applied to every bill beyond the advertised rent." *Id*. ¶ 104(c). Based on the facts alleged in the Complaint, Greystar's advertising practices are plausibly likely to mislead because those practices actually have misled consumers.

Defendants argue that subsequent disclosures[12] in the lease cure the deceptive advertising, Mot. at 23, but that argument is not persuasive as a matter of law generally, or specifically in this context. Although the Tenth Circuit has not directly addressed the

---

[12] To the extent that Defendants attempt to rely on information outside of the Complaint, including assertions about consumer understanding of the leasing process or information purportedly shared when a consumer tours a property, it is both unsupported by proper facts in the Complaint and inappropriate for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *City of Tulsa*, 124 F.4th at 1263–64.

impact of subsequent disclosures, many Circuits have found that initial deception under the FTC Act taints the subsequent transaction even when there are later disclosures. *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014) (collecting FTC cases from the First, Second, Fifth, Seventh, and Ninth Circuits analyzing violation of FTC Act from initial deceptive contact). Determining deception based on the initial claim, regardless of subsequent disclosures, is particularly appropriate in the housing context because renters make consequential decisions based on the advertised price.

As set forth in the Complaint, millions of consumers searching for housing encounter Defendants' deceptive advertisements online. Compl. ¶¶ 43–48. Defendants know that price is a top consideration for most consumers, yet they continue to advertise monthly rental prices that exclude numerous mandatory, fixed, monthly fees. *Id*. ¶¶ 33, 46, 88–91, 93–95, 107–09. Although Defendants have made changes to their advertising in response to the underlying law enforcement investigation, the deceptive price is still the only price advertised to consumers. *Id*. ¶¶ 34, 56–59, 65–67, 71–73. Defendants' tactics prevent consumers from accurately comparing prices between Defendants' units and other rental options, which means consumers may be making housing decisions without a complete picture of the financial implications of their decision. *Id*. ¶¶ 8, 110. Further, consumers may be harmed long before receiving their lease, so the subsequent fee disclosures in the lease do not cure the impact of the initial ads. For example, consumers may pay non-refundable application fees and holding deposits to apply for a unit based on the advertised price, *Id*. ¶¶ 74–77, 97–98, 105, or forego renewing a current lease in anticipation of moving, or pass up an opportunity to

rent another apartment. *See id*. ¶ 110. Although the FTC does not need to prove

reliance or injury to establish a violation, consumers have been injured by relying on

Defendants' advertised prices.[13] *See Freecom,* 401 F.3d at 1203. Especially where, as

here, the initial deceptive claim can cause injury that is realized before consumers

receive an accurate total monthly price, the deceptiveness of the advertisement should

be determined based on the initial claim. *See E.M.A.*, 767 F.3d at 632 (finding that

subsequent disclaimers in the contract did not remedy the initial deceptive claims).

Defendants point to a series of non-binding district court cases finding that hotel

ads that excluded resort fees from the advertised price were not deceptive if the fees

were disclosed before the transaction was completed. Mot. at 23. These cases are

inapplicable to the facts in this case and unpersuasive. There are key contextual

differences between a consumer leasing a rental unit and a consumer staying at a hotel,

including both the duration and importance of the contractual relationships. Notably,

leasing a rental unit typically begins a months-long relationship between a tenant and

landlord. *See, e.g.*, Compl. ¶ 80, Fig. D. Defendants' leases also include large financial

penalties if tenants break the lease. *Id*. ¶ 101. Most hotel stays, on the other hand, are

short, with no long-term financial commitments between the hotel and the consumer.[14]

Defendants also argue that the phrase "base rent," which is used in their ads,

---

[13] For example, one Nevada consumer lost $360 after withdrawing from the rental
process upon discovering Defendants' fees in the lease. Compl. ¶ 105(a).
[14] Other hotel fee cases have distinguished or simply disagreed with the cases cited by
Defendants. *See, e.g.*, *Hall v. Marriott Int'l, Inc.*, No. 19-CV-1715 JLS (AHG), 2020 WL
4727069, at *8 (S.D. Cal. Aug. 14, 2020) (holding that "initial advertising of a low price
not including the resort fee" was a plausible legal theory sufficient to survive a motion to
dismiss).

implies that there will be additional charges.[15] Mot. at 24. Assuming consumers even understand the term "base rent" as signaling that there may be additional fees, a consumer could reasonably interpret the advertisement to mean that the additional costs would include only *optional* add-ons, such as pets or parking, or *variable* costs like water and utilities, rather than the *mandatory, fixed* fees described in the Complaint. Compl. ¶¶ 35, 54, 57, 61, 63. At the motion to dismiss stage, the FTC has thus met its burden to plausibly allege that Defendants' misrepresentation of rental prices are likely to mislead consumers.

## IV.    The Complaint Sufficiently Alleges a Violation of the GLB Act (Count II)

Section 521 of the GLB Act makes it unlawful to:

> obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to another person . . . by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution.

15 U.S.C. § 6821(a)(2). The statute instructs the FTC to enforce the law in the same manner as the Fair Debt Collections Practices Act ("FDCPA"). A violation of the FDCPA is enforced as if it was a violation of an FTC trade rule under Section 19 of the FTC Act,

---

[15] When analyzing a representation, courts look at both what is literally represented in the advertisement as well as the context and circumstances. *FTC v. Nudge, LLC*, No. 2:19-CV-867-DBB-DAO, 2022 WL 2132695, at *12 (D. Utah June 14, 2022). "Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression. Anything less is only likely to cause confusion by creating contradictory double meanings." *FTC v. Your Yellow Book, Inc.*, No. CIV-14-786-D, 2014 WL 4187012, at *5 (W.D. Okla. Aug. 21, 2014) (quoting *Removatron Intern. Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir.1989)).

15 U.S.C. § 57b, with the same available remedies.[16] 15 U.S.C. §§ 1692l, 6822(a).

Count II of the Complaint alleges that, by falsely representing to consumers the cost of

renting a Greystar-managed unit, Defendants induce consumers to disclose their credit

card, debit card, or bank account numbers to pay required application fees and holding

deposits during the rental application process. The plain text of the GLB Act and the

related statutory enforcement scheme support the FTC's allegation that Defendants

violated the GLB Act, and the FTC does not need to allege actual reliance to state a

claim for monetary relief, as Defendants claim. *See* Mot. at 21. Even under Defendants'

reading of the GLB Act, however, the FTC has sufficiently pled Count II.

### A. The Plain Text of the GLB Act Supports Its Application in This Case

The text of Section 521 is clear: a person violates the GLB Act when they "obtain

or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed" a

consumer's financial information "by making a false, fictitious, or fraudulent statement or

representation." 15 U.S.C. § 6821(a)(2). Where the text of a statute is unambiguous,

courts do not look beyond the statutory language. *See, e.g., Bostock v. Clayton Cty.*,

590 U.S. 644, 653 (2020) ("When the express terms of a statute give us one answer

and extratextual considerations suggest another, it's no contest. Only the written word is

the law, and all persons are entitled to its benefit."); *see also Nelson v. United States*,

40 F.4th 1105, 1117 (10th Cir. 2022) (noting the "well-settled principles of statutory

---

[16] Under Section 19, the court may "grant such relief as the court finds necessary to redress injury to consumers . . . from the rule violation . . . . Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation," but not including exemplary or punitive damages. 15 U.S.C. § 57b(b).

interpretation, under which an examination of the plain meaning must be the first step.").[17]

Throughout their Motion, Defendants attempt to write limits into the GLB Act that are unsupported by the text of the statute. Importing the Supreme Court's interpretation of a different statute with different language, Defendants argue that the GLB Act requires a nexus between the false representation and the financial information, and that the information must be targeted for misuse. Mot. at 14–15. Defendants also suggest that the statute must be limited to cases involving financial fraud or identity theft. Mot. at 10–12, 19. The plain text of the GLB Act, which includes no such limitations, forecloses Defendants' arguments.

Every court that has addressed the meaning of Section 521 of the GLB Act has uniformly found that the plain text is clear, and as a result, the court did not need to look beyond the words to determine its meaning. *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 390 (S.D.N.Y. 2023) ("The plain text of the statutory provision controls, and legislative history cannot alter the meaning of the plain text."); *see also FTC v. Doxo, Inc.*, No. C24-0569 TSZ, 2025 WL 887311, at *9 (W.D. Wash. Mar. 21, 2025). Applying the plain meaning of the text to Defendants' alleged conduct is simple. Defendants violate the GLB Act by making false price representations that cause consumers to

---

[17] Nor do the title of the statute and the neighboring provisions impact the meaning of the text itself. The Supreme Court has explained that "the title of a statute and the heading of a section cannot limit the plain meaning of the text." *Bhd. of R.R. Trainmen v. Balt. & Ohio R. R.*, 331 U.S. 519, 528–29 (1947); *see also Dubin v. United States*, 599 U.S. 110, 121 (2023) ("A title will not, of course, 'override the plain words' of a statute.") (quoting *Fulton v. Philadelphia*, 593 U.S. 522, 536 (2021)).

disclose their financial information to pay required application fees and holding deposits
during the rental application process.

Defendants' argument that the GLB Act cannot apply to these facts mirrors those
raised in *RCG Advances*, in which the defendant argued that the ambit of Section 521
should be limited to pretexting or false impersonation. 695 F. Supp. 3d at 390. There,
the court rejected that argument, saying "The plain text reaches 'false, fictitious, or
fraudulent statement[s]' full stop. The Court will not read a limitation (i.e., that the means
of deception must be akin to impersonation) into the text." *Id*. at 390–91.[18] The court
declined to limit the express text of the statute and noted that "even if there is some limit
to that phrase, it certainly reaches statements that would be independently violative of
Section 5 of the FTC [Act]." *Id*. at 391. Other courts have upheld the FTC's allegations
of deceptive conduct under the GLB Act on similar grounds and declined to impose
limitations that do not appear in the statutory language. *See, e.g.*, *Doxo*, 2025 WL
887311, at *9 (rejecting defendants' argument that Section 521 requires a "literally false
statement" because "[t]he statute extends to false, fictitious, or fraudulent
*representations*") (emphasis in original); Declaration of Samantha Bennett, Ex. A, at 36
(decision in *FTC v. Voyager Digital LLC*, No. 23-cv-8690 (S.D.N.Y. May 16, 2024),
rejecting the argument that "false, fictitious, or fraudulent" means "something different"
from the FTC Act); *FTC v. Celsius Network Inc.*, No. 23CV6009 (DLC), 2023 WL

---

[18] The *RCG Advances* defendant, like Defendants, cited to the legislative history for a
non-exhaustive list of possible scenarios in which Section 521 might apply, "such as"
pretexting. H.R. Rep. No. 106-434, at 173 (1999); *see also RCG Advances*, 695
F. Supp. 3d at 390; Mot. at 12.

8603064, at *5 (S.D.N.Y. Dec. 12, 2023) (denying motion to dismiss FTC's GLB Act

claim and adopting reasoning from *RCG Advances*).

Defendants try to distinguish *RCG Advances* and the other Section 521 cases as

being limited to situations involving a "financial services provider" or "allegations of

financial fraud or identity theft." Mot. at 19. As discussed above, however, these courts

refused to impose such extra-textual limits on the statute's scope. Here, because

Defendants' false price representations are "independently violative of Section 5 of the

FTC Act," *see RCG Advances*, 695 F. Supp. 3d at 391, and induce consumers to

disclose their financial information to pay required fees and deposits during the rental

application process, the FTC has plausibly alleged that Defendants violate the GLB Act.

Defendants further attempt to sidestep these cases by arguing that the Supreme

Court's interpretation of a criminal statute supports their proposed limitations on Section

521. Mot. at 12–14. Defendants cite to *Loughrin v. United States*, where the Court

interpreted the phrase "by means of" in the federal bank fraud statute and determined

that to commit bank fraud, a "defendant's false statement [must be] the mechanism

naturally inducing a bank (or custodian) to part with its money." 573 U.S. 351, 365

(2014). Defendants analogize the Court's interpretation of "by means of" in the bank

fraud statute to the GLB Act's phrase "by making" to argue that a violation of the GLB

Act requires the same "relational element" between the false statement or

representation and the customer financial information. Mot. at 14.

Defendants' reliance on *Loughrin* is misplaced and unpersuasive. By focusing

only on the "by making" phrase, Defendants ignore a significant difference between the

bank fraud statute and the GLB Act: the GLB Act identifies the intended recipient of the false statements or representations (i.e., the customer of a financial institution). 15 U.S.C. § 6821(a)(2). The bank fraud statute does not. 18 U.S.C. § 1344.

This is an important distinction. The *Loughrin* Court emphasized that its interpretation of the bank fraud statute was aimed at ensuring that false statements made to non-bank sources, which therefore had at most a "tangential" connection to the bank's release of its property, did not violate the federal bank fraud statute. 573 U.S. at 362–63. The bank fraud statute does not specify an audience for the false statements, and so the risk of a tenuous connection between the false statement and the ultimate release of bank property is great.[19] This is not the case with the GLB Act. The GLB Act requires that the false or fictitious statements or representations be made to a particular recipient—under 15 U.S.C. § 6821(a)(1), a financial institution employee, and under 15 U.S.C. § 6821(a)(2), a customer of a financial institution. The GLB Act identifies which recipients of the false statements trigger the application of the law, providing a non-tangential connection between the triggering statement and the disclosure of financial

---

[19] The handbag example is illustrative. *See* Mot. at 13. Under the bank fraud statute, a counterfeit handbag seller would not be guilty of bank fraud if they sold a fake bag to a customer who paid with a check drawn on funds in bank custody. *Loughrin*, 573 U.S. at 365. This is not bank fraud, according to the *Loughrin* Court, because the "means" of obtaining the bank's property—the false representation that the bag was genuine—was made to the customer, and had no bearing on the *bank's* determination to release funds in its custody. *Id.*; *see also id.* at 365 n.8 (The lie to the handbag buyer is "not the mechanism by which the fraudster obtains *bank* property, given that the lie will never reach the bank."). Under the relevant provision of the GLB Act, however, the only requirement is that the false statement be made to the *consumer* and induce them to disclose their information. 15 U.S.C. § 6821(a)(2). That is, the statement does not need to target the information, but the consumer.

information. The Court's logic from *Loughrin* does not apply to the case at hand.

Similarly, Defendants cannot support their position that there is an implied requirement in the GLB Act that "the advertising at issue specifically *targets financial information for fraudulent misuse*." Mot. at 15. The GLB Act is violated if a false statement is made to a customer, and that statement induces the customer to disclose their financial information (e.g., if a false ad is targeted at a consumer who submits a rental application and pays an application fee after viewing the ad); the statute does not speak to what happens after the information is disclosed. 15 U.S.C. § 6821(a). Requiring that the financial information be targeted for "misuse" is exactly the type of extra-textual limit that courts have repeatedly refused to impose.

Finally, even under Defendants' interpretation of the GLB Act, Count II is sufficiently pled. The Complaint alleges that price is a material term, Defendants falsely represent the true price of renting a unit, and customers provide their financial information to pay application fees and deposits after seeing Defendants' misrepresentation. A consumer cannot lease a unit without submitting an application and paying an application fee. Comp. ¶ 76. Defendants cannot credibly argue that their price misrepresentations are aimed at convincing consumers to sign leases, Mot. at 16, yet are somehow completely unrelated to the required application and fees associated with applying for the unit. Indeed, the application and fees are a necessary precursor to signing any lease. The Complaint thus plausibly alleges that Defendants' misrepresentation is "the mechanism naturally inducing [the customer] . . . to part with" their financial information. *Loughrin*, 573 U.S. at 363. Therefore, under any reading of

the GLB Act, the FTC has plausibly alleged that Defendants have violated the statute.

**B.  Congress Granted the FTC the Authority to Enforce the GLB Act According to Its Terms**

Application of the GLB Act here neither circumvents *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021), nor expands the FTC's authority. The GLB Act directs the FTC to enforce the statute as a rule violation under Section 19. 15 U.S.C. §§ 57b, 1692l, 6822(a). Proceeding under the GLB Act here is consistent with the FTC's lawful authority and past practice and does not, contrary to Defendants' claim, *see* Mot. at 18, constitute an end run around *AMG*'s "coherent enforcement scheme." 593 U.S. at 78.

Defendants assert that, if the GLB Act applies here, the statute would regulate essentially all deceptive advertising that violates Section 5 and concludes with a credit card transaction. Mot. at 16. The reach of Section 5, however, is substantially broader than the GLB Act, covering all deceptive acts or practices, including, for example, deceptive omissions and failures to disclose. 15 U.S.C. § 45(a). Section 521 is narrower in scope, requiring a statement or representation. 15 U.S.C. § 6821(a). To the extent the two statutes overlap, Defendants fail to cite to any authority that overlap between the GLB Act and Section 5 means the FTC cannot bring cases under both statutes.

Furthermore, contrary to Defendants' claim, *see* Mot. at 9, the FTC is still entitled to seek monetary relief for violations of the GLB Act following *AMG* because the GLB Act is enforced through Section 19 of the FTC Act, *not* Section 13(b). The GLB Act expressly directs the FTC to enforce the Act as if it were a rule under Section 19, and Section 19 expressly permits monetary (and other) relief for relevant violations of rules. 15 U.S.C. §§ 57b, 1692l, 6822(a). By contrast, the Supreme Court in *AMG* looked to the

text of Section 13(b) and determined that, when bringing a Section 5 claim, the FTC

could not seek monetary relief in federal court in the first instance. *AMG*, 593 U.S. at 78.

The FTC has for decades sought, and obtained, monetary relief under Section 19 for

violations of other rules and statutes. *AMG* did not affect the FTC's ability to seek relief

under the other rules and statutes Congress has empowered the agency to enforce.

*See, e.g.*, *FTC v. Credit Bureau Ctr., LLC*, 81 F.4th 710, 717 (7th Cir. 2024) (

"[P]ermitting the Commission to enforce ROSCA [the Restore Online Shoppers'

Confidence Act] through [S]ection 19—unlike [S]ection 13(b)—does not undermine the

remedial structure that Congress created in the [FTC Act]. To the contrary, it ensures

that we respect Congress's decision to use the Act's enforcement mechanisms to

implement ROSCA"); *see also FTC v. Elegant Sols., Inc.*, No. 20-55766, 2022 WL

2072735 at *2 (9th Cir. June 9, 2022) ("[A]lthough *AMG* held that monetary relief is not

available under section 13(b) of the FTC Act, . . . section 19 of the Act separately and

specifically authorizes the FTC to seek monetary relief to address violations of certain

rules, including the [Telemarketing Sales Rule], 15 U.S.C. § 57b(a)(1),(b).").

Nor does the FTC's enforcement of the GLB Act here constitute an expansion of

its congressionally delegated authority. Defendants' reference to *New Mexico v. Dep't of

Interior*, 854 F.3d 1207 (10th Cir. 2017), is unavailing. *See* Mot. at 16–17. In that case,

the Department of the Interior promulgated rules that directly contradicted explicit

language of a statute. 854 F.3d. at 1225. The Tenth Circuit struck down the rule, finding

that it was an attempted end run around the administrative scheme laid out by statute.

*Id*. Unlike the Department of the Interior, the FTC is not issuing a regulation here, and

21

Congress's "clear . . . authorization" is apparent in the plain text of the statute: Congress instructed the FTC to enforce Section 521 of the GLB Act when a person obtains, attempts to obtain, causes the disclosure of, or attempts to cause the disclosure of customer information of a financial institution. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); 15 U.S.C. §§ 6821(a)(2), 6822(a).

That the FTC had brought only one case under this statute prior to *AMG* does not mandate a different result. *See, e.g.*, *FTC v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1331 (W.D. Wash. 2024) (order denying motion to dismiss) ("[A]n agency does not waive its right to enforce a statute when it has declined to do so in the past."). The FTC has never issued an official interpretation of the GLB Act generally, or Section 521 in particular, that differs from its application in the instant matter. Contrary to Defendants' claim, *see* Mot. at 18, nothing in the FTC's past practice limits the agency's ability to bring claims under the GLB Act here.

Similarly, issuance of the Unfair and Deceptive Fees Rule does not undermine the FTC's ability to bring a claim under the GLB Act.[20] *See* FTC's Statement of Basis and Purpose for the Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2066 (FTC Jan. 10, 2025) (amending 16 C.F.R. §§ 464.1–5) ("Fees Rule"). The Fees Rule does not cover rental housing providers, and is limited to only the live-event ticketing and short-term lodging industries. 16 C.F.R. § 464.1 (definition of "Covered good or service"). The Fees Rule does not preclude the FTC from enforcing other statutes, including the GLB Act, as Defendants claim, *see* Mot. at 20, even with respect

---

[20] The Rule went into effect on May 12, 2025.

to the two covered industries. The Fees Rule has different elements, and different means of relief, than a Section 521 claim. For example, the Fees Rule includes disclosure requirements, and penalizes misrepresenting the nature of any fees in addition to making false representations about price. 16 C.F.R. §§ 464.2(b)–(c), 464.3.

The Commission's rulemaking process involved the consideration of thousands of comments from consumers, consumer advocates, and industry groups. The Commission ultimately exercised its discretion to "use its rulemaking authority incrementally," applying the Fees Rule to two industries where the Commission had been studying drip pricing for over a decade and where, unlike with the rental housing industry, industry groups "recognized the need for the Commission's rulemaking and generally supported the rule's application to those industries." Fees Rule at III.A.4. The Commission thus did not "specifically exclude" rental housing—it specifically *included* only live-event ticketing and short-term lodging.[21]

Moreover, in promulgating the Fees Rule, the Commission never determined that Defendants or other players in the rental housing industry were acting lawfully or should not be subject to enforcement under other authorities available to the FTC. In fact, the Commission stated repeatedly that the practice of bait-and-switch pricing was prevalent across the economy, that such conduct was unlawful, and that the Commission intended to continue addressing it through enforcement actions. *Id*. at II.A. Indeed, in response to industry group comments—including from the rental housing industry—the

---

[21] To the extent that the Rule noted that "rental housing" was not included in the definition of "Covered Good or Service," this was done only to clarify that rental housing providers would not be included as a provider of short-term lodging. *Id*. at III.A.4.

Commission reiterated that deceptive door openers, such as Defendants'
advertisements, are unlawful. *See Id*. at III.A.8 ("The Commission does not agree that
disclosures in contracts or agreements adequately protect consumers from deceptive
advertising that omits mandatory fees.").

      The Fees Rule thus neither sanctioned Defendants' conduct nor immunized the
rental housing industry from every other statute or rule enforced by the FTC. *See FTC
v. Amazon.com, Inc.*, No. 2:23-cv-00932-JHC, 2025 WL 592998, at *13 (W.D. Wash.
Feb. 24, 2025) (denying defendants' motion to compel records regarding Negative
Option Rule rulemaking because FTC brought case under ROSCA, and the rule "does
not affect ROSCA's current requirements").

### C. The Complaint Properly Alleges a Claim for Relief Under the GLB Act

      Defendants argue in Section II of their Motion that the Court should dismiss
Count II because the Complaint does not allege that consumers actually relied on its
misrepresentations. Mot. at 21. But courts have repeatedly held that a presumption of
reliance applies where the FTC seeks consumer redress under either Section 13 or
Section 19 of the FTC Act. *See, e.g.*, *Freecom*, 401 F.3d at 1205 ("FTC is not required
[to show any] purchaser actually relied on or was injured by the unlawful
misrepresentations."); *Nudge*, 2022 WL 2132695, at *45–46 (applying presumption in
Section 19 case); *see also FTC v. Figgie Int'l*, 994 F.2d 595, 605–06 (9th Cir. 1993)
(applying presumption in Section 19 case). Because a presumption of reliance applies,
the FTC does not need to allege actual reliance to sufficiently state a claim for relief
under the GLB Act.

Courts have found that the FTC Act's function and goals compel a presumption of reliance where the FTC seeks compensatory monetary relief for many consumers. As the Tenth Circuit emphasized in *Freecom*: "Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the section." 401 F.3d at 1205–06 (quoting *Figgie*, 994 F.2d at 605). The Tenth Circuit likewise applied the presumption in an FTC case seeking compensatory monetary contempt remedies. *FTC v. Kuykendall*, 371 F.3d 745, 765–66 (10th Cir. 2004) (en banc). The rationale applies with equal force in the Section 19 context. *See, e.g.*, *Figgie*, 994 F.2d at 606 ("It is well established with regard to Section 13 of the FTC Act . . . that proof of individual reliance by each purchasing customer is not needed . . . . The same reasoning is applicable to Section 19."); *Kuykendall*, 371 F.3d at 765–66. Accordingly, the District of Utah in *Nudge* applied the presumption of reliance to the FTC's Section 19 claims for redress. 2022 WL 2132695, at *45-46. The court noted that while "*Freecom* discussed consumer redress in the context of § 13(b) rather than § 19, its reasoning was largely based on a case [*Figgie*] that applied the same standards to § 19." *Id*. at *45 n.514. This Court should similarly apply the presumption of reliance here.

Furthermore, even if the FTC were required to plead actual reliance, when reviewing the facts in the light most favorable to the Plaintiffs, the FTC has plausibly alleged that consumers relied on Defendants' price misrepresentations. As discussed in Section III.B above, the Complaint includes multiple consumer complaints and alleges that price is a material term on which consumers rely when making decisions, including

when choosing rental housing. *See* Compl. ¶¶ 104–05, 109.

Defendants misstate the thrust of the FTC's allegations. *See, e.g.*, Mot. at 7 n.3.
The Complaint alleges that Defendants misrepresent the true cost of leasing an
apartment and thereby induce consumers to disclose their financial information to pay
required application and holding fees as part of the rental application process. Compl.
¶ 100. The question is not whether consumers would have leased the apartment if they
had known about the monthly fees, but whether they would have *applied* for the
apartment and paid the upfront, nonrefundable fees. Defendants ignore this integral
step between the advertisement and lease, *see, e.g.*, Mot. at 21, where consumers are
on the hook for potentially hundreds of dollars when submitting their application based
on Defendants' price misrepresentation. The Complaint thus plausibly alleges that
consumers rely on Defendants' price misrepresentation when deciding to apply for a
unit and disclose their financial information to pay the requisite fees. Count II sufficiently
states a claim for relief.

## V.     The Complaint Properly Alleges That Defendants Violated the CCPA (Counts III and IV)

Defendants argue that the Attorney General has failed to state a claim under the
CCPA, citing to *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.* for the
proposition that the CCPA requires the Attorney General to prove an "actual tendency to
mislead" to establish deception under Colo. Rev. Stat. §§ 6-1-105(1)(l), (rrr). 62 P.3d
142, 147 (Colo. 2003); Mot. at 22. However, Defendants are mistaken. The Colorado
Supreme Court has found that it "is in the public interest to invoke the state's police
power to prevent the use of *methods* that have a *tendency or capacity* to attract

customers through deceptive trade practices." *May Dep't Stores v. State ex rel Woodward*, 863 P.2d 967, 973 (Colo. 1993) (citing *People ex rel Dunbar v. Gym of America*, 177 Colo. 97, 113, 493 P.2d 660, 668 (Colo. 1972). That is exactly what is at issue in this case: Defendants' advertisements had a capacity or tendency to mislead consumers about the actual cost of renting an apartment managed by them.

Conduct has the "tendency or capacity" to mislead where it leads consumers to have "mistaken beliefs" about a product's value, purpose, or contents. *Dr. W.B. Caldwell, Inc. v. FTC*, 111 F.2d 889, 890 (7th Cir. 1940). The Attorney General alleged that Defendants' deceptive advertising led consumers to have the mistaken belief that Defendants would charge them only the stated rental price for the rental unit. Compl. ¶ 72.

Defendants cite several cases brought under other consumer protection statutes for the proposition that "an advertisement is not deceptive if fees are disclosed before the consumer completes the transaction." Mot. at 23. Notably, none of these cases analyze the CCPA, and all are distinguishable from this case.

First, the Attorney General has alleged that Defendants do not disclose all fees before the consumer completes a transaction with Defendants, so regardless of the applicability of these cases, questions of material fact still exist. Compl. ¶¶ 76–77.

Second, Colorado courts have not reached the same conclusion regarding drip pricing as the cases cited by Defendants. In fact, the Colorado standard differs significantly. Even if this Court were to conclude that Defendants did disclose the fees before the consumer completed the transaction, the Colorado Supreme Court, in

analyzing the CCPA, has concluded that "the accurate disclosure of a deceptively set price does not automatically legitimize the price or cure the alleged deception." *State ex rel. Coffman v. Castle L. Grp., LLC*, 375 P.3d 128, 136 (Colo. 2016).

Courts have reasoned that while "disclosure may be an adequate remedy to correct fraudulent and misleading advertising practices" in some instances, disclosure does not "adequately protect against the reoccurrence of the prohibited conduct." *Id*. at 135–136 (citing *May Dep't Stores*, 863 P.2d at 979). Further, "disclaimers may be ineffective or disregarded by a consumer who is confused by the disclosure." *Id*. The Attorney General has alleged that, to the extent Defendants provide disclosures, those disclosures are inadequate, do not cure the deception, and are ineffective. Compl. ¶ 73. The degree to which Defendants' disclosures are adequate is an issue of fact under Colorado law.

Courts have made clear that there is no requirement for actual injury, at least in the context of the Attorney General's action for injunctive relief and civil penalties. *May Dep't Stores*, 863 P.2d at 973. While actual injury is necessary in an analysis of potential restitution, that is a triable issue of fact that is premature at this early juncture. Defendants' attempt to widen their argument beyond the four corners of the Complaint by purporting to know what "any ordinary consumer who has ever leased an apartment understands," Mot. at 24, is both improper speculation and without foundation.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

Dated:  May 16, 2025          /s/ Samantha Bennett
                             SAMANTHA BENNETT
                             NY Bar No. 5132063
                             ROBERTA DIANE TONELLI
                             Cal. Bar No. 278738
                             SPENCER SCOVILLE
                             D.C. Bar No. 1766898
                             ALYSSA J.H. WU
                             Cal. Bar No. 339651
                             Federal Trade Commission
                             Western Region San Francisco
                             90 7th Street, Suite 14-300
                             San Francisco, CA 94103
                             Tel: (415) 848-5100
                             Email: sbennett@ftc.gov; rtonelli@ftc.gov;
                             sscoville@ftc.gov, awu1@ftc.gov

                             Attorneys for Plaintiff
                             FEDERAL TRADE COMMISSION


Dated:  May 16, 2025          PHILIP J. WEISER
                             Attorney General


                             /s/ Sarah Silver
                             JULIANNE B. CRAMER, 57111
                             First Assistant Attorney General
                             ADAM T. RICE, 53963
                             SARAH SILVER, 58465
                             Assistant Attorneys General
                             Civil Rights Unit, Housing Protection
                             Consumer Protection Section
                             1300 Broadway, 9th Floor
                             Denver, CO 80203
                             Tel: (720) 508-6000
                             Email: Julie.Cramer@coag.gov;
                             Adam.Rice@coag.gov;
                             Sarah.Silver@coag.gov

                             Attorneys for Plaintiff
                             STATE OF COLORADO

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system.  Service was effected

by and through the Court's CM/ECF system.


/s/ Samantha Bennett
Samantha Bennett
Federal Trade Commission
Western Region San Francisco
90 7th Street, Suite 14-300
San Francisco, CA 94103