IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FEDERAL TRADE COMMISSION, et al.,

    *Plaintiffs,*

v.

GREYSTAR REAL ESTATE PARTNERS, LLC, et al.,

    *Defendants.*

Case No. 1:25-cv-00165

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.     The FTC Fails to State a GLB Act Claim. .............................................................. 1

II.    Plaintiffs Do Not Plausibly Allege that Consumers Relied on the Challenged Advertisements. ................................................................................... 7

III.   Plaintiffs Do Not Plausibly Allege that the Challenged Advertisements Are Deceptive. .............................................................................. 8

IV.    The Complaint Fails to State a Claim Against Each Defendant. ......................... 10

V.     The Court Lacks Personal Jurisdiction over All Defendants Except for Greystar Management Services, LLC and GREP Southwest, LLC. ........................................................................................................................ 11

CONCLUSION ............................................................................................................. 13

## TABLE OF AUTHORITIES

**CASES**

*Abney v. Philip Morris USA Inc.*, 2024 WL 915008 (D.N.M. Mar. 4, 2024) .................... 12

*AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021) .......................................... 6

*Dubin v. United States*, 599 U.S. 110 (2023) ........................................................ 2, 3, 4

*First Magnus Financial Corp. v. Star Equity Funding, L.L.C.*, 2007 WL
   635312 (D. Kan. Feb. 27, 2007) ............................................................................. 13

*FTC v. Celsius Network Inc.*, 2023 WL 8603064 (S.D.N.Y. Dec. 12, 2023) .................... 5

*FTC v. Doxo, Inc.*, 2025 WL 887311 (W.D. Wash. Mar. 21, 2025) ................................. 5

*FTC v. Financial Education Services*, 2023 WL 8101841 (E.D. Mich. Nov.
   21, 2023) ................................................................................................................. 5

*FTC v. Freecom Communications, Inc.*, 401 F.3d 1192 (10th Cir. 2005) ....................... 9

*FTC v. LoanPointe, LLC*, 2011 WL 4348304 (D. Utah Sept. 16, 2011), *aff'd*,
   525 F. App'x 696 (10th Cir. 2013) ............................................................................ 10

*FTC v. Noland*, 2021 WL 289659 (D. Ariz. Jan. 28, 2021) ............................................ 10

*FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368 (S.D.N.Y. 2023) ........................... 4, 5

*GCIU-Employer Retirement Fund v. Coleridge Fine Arts*, 808 F. App'x 655
   (10th Cir. 2020) ...................................................................................................... 11

*Goodwin v. Bruggeman-Hatch*, 2014 WL 4243822 (D. Colo. Aug. 27,
   2014) ..................................................................................................................... 12

*Matter of Heinz W. Kirchner*, 63 F.T.C. 1282 (1963), *aff'd*, 337 F.2d 751 (9th
   Cir. 1964) .............................................................................................................. 10

*Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000) ..................................... 11

*Loughrin v. United States*, 573 U.S. 351 (2014) ..................................................... 2, 3, 4

*New Mexico v. Department of the Interior*, 854 F.3d 1207 (10th Cir. 2017) ................... 7

*Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th Cir.
   2000) ................................................................................................................ 11, 12

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) .................................................. 11

*Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011) ...................................................... 12

*State ex rel. Coffman v. Castle Law Group, LLC*, 375 P.3d 128 (Colo. 2016) ............................................................................................................................ 9

*United States v. Berroa*, 856 F.3d 141 (1st Cir. 2017) ................................................... 2, 3

*Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014) ............................................... 7

**STATUTES**

15 U.S.C. § 57b(b) ............................................................................................................ 7

15 U.S.C. § 6821(a)(2) ...................................................................................................... 1

18 U.S.C. § 1028A(a)(1) .................................................................................................... 3

Gramm-Leach-Bliley Financial Modernization Act, Pub. L. No. 106-102, § 521, 113 Stat. 1338, 1446 (1999) ............................................................................. 2

**OTHER AUTHORITIES**

Transcript, *FTC v. Voyager Digital LLC*, No. 23-cv-8960 (S.D.N.Y. May 16, 2024), Ex. A to Decl. of Samantha Bennet, ECF No. 39-2 ....................................... 5

The FTC's Opposition confirms that it is attempting to transform the Gramm-Leach-Bliley Act—a narrow and rarely used provision focusing on theft of financial information—into a nationwide ban on all fraud somehow involving a credit card. The FTC's theory contradicts a wall of Supreme Court precedent rejecting the government's efforts to use creative interpretations of federal fraud statutes as a means of maximizing federal power. Equally troubling, the FTC cites an atextual presumption of reliance in Section 19 cases that would allow it to evade bedrock limitations on its authority. To allow this case to proceed, the Court would need to break new ground, radically expanding the FTC's authority in contravention of Supreme Court precedent. It should decline to do so. And allowing the Colorado claims to proceed would require a similarly unprecedented expansion of existing law; there too, the Court should decline.

## I.   The FTC Fails to State a GLB Act Claim.

The FTC openly touts its goal of transforming the GLB Act into an all-purpose nationwide ban on fraud in any transaction involving a credit card. For the first two decades after the GLB Act's enactment, no one noticed that Congress had conferred the FTC with such extraordinary authority to police fraud across the national economy–because that authority does not exist. The FTC's interpretation distorts the GLB Act's text and defies multiple Supreme Court cases that have rejected similar maneuvers.

By its terms, the GLB Act regulates conduct that is *targeted at* a consumer's *financial information*, not just their money. The text prohibits fraud perpetrated to entice a consumer to disclose "customer information of a financial institution." 15 U.S.C. § 6821(a)(2). The relevant sections are titled "Fraudulent Access to Financial Information"

and "Privacy Protection for Customer Information of Financial Institutions." Pub. L. No. 106-102, § 521, 113 Stat. 1338, 1446 (1999). Contra the FTC, relying on the titles of sections is not extratextual, *see* Opp. 15; it is a statutory-interpretation method that the Supreme Court has routinely blessed. *See, e.g.*, *Dubin v. United States*, 599 U.S. 110, 121 (2023).

Even if the GLB Act's text *could*, read literally, be construed to enact a far-reaching ban on fraud involving credit cards, the Supreme Court has made clear that "a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words." *Id.* at 120 (quotation marks omitted). Courts have been particularly reluctant to adopt overbroad interpretations of fraud statutes—interpretations closely similar to the one the FTC advances here. Mot. 12-14; *see also Loughrin v. United States*, 573 U.S. 351, 361-66 (2014) (rejecting broad, literal interpretation of bank fraud statute); *United States v. Berroa*, 856 F.3d 141, 149-54 (1st Cir. 2017) (rejecting similar interpretation of mail fraud statute).

Indeed, *Loughrin* is on all fours with this case. *Loughrin* held that a person does not obtain bank property "by means of" a false statement merely by defrauding someone who pays by check. Otherwise, the bank fraud statute would be transformed into a national ban on fraud with checks, even frauds that have nothing to do with banks. *Loughrin*, 573 U.S. at 361-62. Here, likewise, a person does not obtain financial information "by making" a false statement merely by defrauding someone who pays by credit card. Otherwise, the GLB Act would be transformed into a national ban on fraud with credit cards, even frauds that have nothing to do with credit cards—like purported

2

frauds over the monthly cost of rent. In *Loughrin*, the Court held that the bank fraud statute applies only when the bank property is the object of the fraud. *Id.* at 362-65. Here, too, the GLB Act applies only when financial information is the object of the fraud. Mot. 14-16.

The FTC attempts to distinguish this case from *Loughrin* on the ground that, unlike the statute there, "the GLB Act identifies the intended recipient of the false statements or representations (i.e., the customer of a financial institution)," Opp. 18. That is irrelevant. The fact that the GLB Act protects the customers of financial institutions does not imply that *all* frauds incidentally involving customers' credit cards should be treated as the type of financial-information fraud that the statute was intended to target.

The FTC is silent on the analogy between its reading of the GLB Act and the interpretation of the fraud statute the Supreme Court rejected in *Dubin*. There, the statute prohibited knowing possession or use of "a means of identification of another person" during commission of a predicate felony. 18 U.S.C. § 1028A(a)(1). The Court overturned a conviction for "overbill[ing] Medicaid" where the defendant had used documents that happened to include an identifying patient number. *Dubin*, 599 U.S. at 113-15. The Court reasoned that—lest the statute be read to sweep in every crime that happens to use "ubiquitous payment methods" involving "names or other means of identification," such as "payment apps [and] credit and debit cards"—the law is violated only when the "misuse of another person's means of identification is at the crux of what makes the underlying offense criminal." *Id.* at 114, 129; *see also Berroa*, 856 F.3d at 149-54 (similar). Exactly the same logic should apply here: the GLB Act applies only when obtaining financial information is the crux of the alleged fraud.

3

Under that standard, Plaintiffs do not state a claim, because the crux of the alleged fraud was not obtaining credit card information, but instead entering into a transaction in which the renter merely happened to pay with a credit card. *See* Mot. 14-16. That "[a] consumer cannot lease a unit without submitting an application and paying an application fee," Opp. 19, does not mean an advertisement for that unit is *targeted* at financial information. That the consumer "*happen[s]* to use ubiquitous payment methods" at an ancillary step along the way does not change the target of the advertisement or the nature of the transaction. *Dubin*, 599 U.S. at 129; *cf. Loughrin*, 573 U.S. at 363 ("If … Jane traded her car for money to take a bike trip cross-country, no one would say she 'crossed the Rockies by means of a car,' even though her sale of the car somehow figured into the trip she took."). That financial information is not the crux of the alleged fraud here is made obvious by the FTC's failure to dispute that a consumer can pay their monthly rent and fees using entirely different financial information from what they submit in their application—and a consumer's decision to make such a switch would not in any way affect the FTC's theory. *See* Mot. 15-16.

Despite the FTC's attempt to make it seem otherwise, *see* Opp. 15-17, no court has endorsed the government's broad and wide-reaching interpretation of the GLB Act. The FTC relies heavily on *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368 (S.D.N.Y. 2023), but the defendant there did not dispute that the target of the alleged scheme was customer financial information. (That makes sense—the defendant was collecting bank account information, which he needed to provide loans.) Instead, the defendant argued that the statutory phrase "false, fictitious, or fraudulent statement or representation"

4

extends only to certain means of deception, such as "impersonation." *Id.* at 389-90. The defendant in *RCG* did not raise—and the court did not consider—whether the phrase "by making" requires a nexus between the misrepresentation and the financial information. And for good reason: Such a requirement would not have helped the defendant in that case, where the point of the scheme was access to consumers' bank accounts—in other words, his target *was* their financial information. *Id.* at 380.

The other cases the FTC cites likewise did not raise or involve the issue presented here.[1] Defendants' primary point in distinguishing these cases is not, as the FTC suggests, *see* Opp. 17, that the defendant being a financial services provider is itself significant. It is that those defendants' fraudulent schemes *targeted* financial information *qua* financial information.[2] Here, by contrast, the financial information is entirely incidental to the alleged false statement.

---

[1] *See FTC v. Doxo, Inc.*, 2025 WL 887311, at *9 (W.D. Wash. Mar. 21, 2025) (whether "false, fictitious, or fraudulent statement or representation" must be "literally false"); Tr. at 36-37, *FTC v. Voyager Digital LLC*, No. 23-cv-8960 (S.D.N.Y. May 16, 2024), Ex. A to Decl. of Samantha Bennet, ECF No. 39-2 ("*Voyager Digital* Tr.") (whether a statement that is misleading for FTC Act purposes is "false, fictitious, or fraudulent" for GLB Act purposes); *FTC v. Celsius Network Inc.*, 2023 WL 8603064, at *5 (S.D.N.Y. Dec. 12, 2023) (whether individual liability is same under GLB Act as under FTC Act).

[2] *See Doxo,* 2025 WL 887311, at *1-3 (third-party bill-payment services required financial information); *Voyager Digital* Tr. at 39 (customers provided financial information to make deposits with defendant, who claimed to be an FDIC-insured institution); *Celsius Network*, 2023 WL 8603064, at *1-2 (customers provided financial information to deposit funds with and/or secure loans from defendant); *RCG*, 695 F. Supp. 3d at 379-80 (customers provided financial information to allow daily direct debits in fraudulent cash advance scheme); *FTC v. Fin. Educ. Servs.*, 2023 WL 8101841, at *1 (E.D. Mich. Nov. 21, 2023) ("sham" credit repair company obtained financial information to withdraw money before providing promised services).

The FTC articulates no limiting principle for its broad and unprecedented assertion of authority. The FTC barely disagrees that its use of the GLB Act would allow it to regulate every non-cash transaction in the economy through monetary enforcement actions. And the FTC does not engage with Defendants' argument concerning *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021). *AMG*'s discussion of the considered limitations Congress placed on the FTC's *monetary* enforcement authority under Section 19, as opposed to its *injunctive* enforcement authority under Section 13, *see id.* at 77-78, illustrate why the GLB Act cannot be read to abrogate those limitations and make monetary relief available in virtually any deceptive advertising case. For the same reason, the Court should not assume that a later-enacted statute treated as a "rule" for Section 19 purposes sweeps up nearly all false advertising in the modern economy.

The FTC similarly misses Defendants' point about the Fees Rule. Defendants have never suggested that the Rule "preclude[s] the FTC from enforcing other statutes." Opp. 22. But its issuance shows that no one thought the FTC *already* had monetary enforcement authority over base-rent advertising in multifamily housing until the FTC's creative new interpretation of the GLB Act. Under the FTC's theory, the narrowing of the Fees Rule to exclude the multifamily-housing industry had precisely zero impact on the FTC's enforcement authority—a conclusion that would render irrelevant the rulemaking process, including the Commission's careful consideration of comments distinguishing this industry from those involving entirely online transactions. Mot. 1, 7, 20-21.

This Court should look with skepticism on the FTC's convenient discovery of a statute it had almost no occasion to use before the Court circumscribed its authority in

6

*AMG*. *See New Mexico v. Department of the Interior*, 854 F.3d 1207, 1226 (10th Cir. 2017); *see also Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). In *New Mexico*, as here, the Supreme Court limited an agency's options under an "explicit and detailed remedial scheme," 854 F.3d at 1226, and the agency sought to achieve the same result through a new means that did not rely on the same statute. The FTC's only response here is that it "is not issuing a regulation," Opp. 21, but that makes its position even worse. At least when the agency enacts a regulation, everyone has the benefit of notice and comment, and its rule applies to all parties nationwide. Here, the FTC has conjured a new and unprecedented authority and is immediately using that authority to sue and seek to punish one company for conduct that is indisputably ubiquitous in the multifamily-housing industry—precisely *because* there is no rule and because no one could have imagined the GLB Act interpretation the FTC has invented for purposes of this suit.

## II.     Plaintiffs Do Not Plausibly Allege that Consumers Relied on the Challenged Advertisements.

The FTC must show actual consumer reliance, without relying on a presumption. Section 19 requires that monetary relief be "*necessary* to redress *injury* to consumers." 15 U.S.C. § 57b(b) (emphasis added). The FTC offers no textual analysis whatsoever of how Section 19 could permit such relief without establishing that such injury in fact occurred, nor did either of the cases it cites grapple with the textual and practical differences between Sections 13 and 19.

To argue it has adequately pleaded reliance, the FTC unconvincingly insists the question is whether consumers "would have *applied* for [an] apartment" "if they had known about the monthly fees." Opp. 26 (emphasis in original). But its theory of harm plainly

7

depends on fees only paid *after* signing the lease. *See* Compl. ¶ 3 (alleging that Defendants "bilked … consumers out of hundreds of millions of dollars by charging 'Hidden Fees' (mandatory, fixed fees that are not included in the advertised price)"). A person who views an advertisement, applies for an apartment, obtains a lease agreement, reads it, and signs it is not injured by the advertisement's characterization of "base rent."

As for Colorado's claims, Defendants do not dispute for purposes of this Motion that the Attorney General need not prove actual injury to receive "injunctive relief and civil penalties." Opp. 28. But here, the Attorney General apparently seeks non-penalty "monetary relief." Compl. ¶ 2. Without a showing of reliance, that relief is unobtainable.

### III.  Plaintiffs Do Not Plausibly Allege that the Challenged Advertisements Are Deceptive.

The challenged advertisements are not deceptive for a straightforward reason: all renters are told exactly how much they will pay before they sign a lease. The advertisements accurately convey base rent—a phrase that strongly suggests that there will be extra costs—and then all of those extra costs are disclosed before the tenant signs a lease.[3] Plaintiffs' claim that "renters make consequential decisions based on the advertised price," Opp. 11, suggests that renters *neither* understand the phrase "base rent" *nor* read leases before signing them. Such implausible speculation cannot withstand a motion to dismiss.

---

[3] Indeed, Plaintiffs' Complaint itself acknowledges that mandatory fees are disclosed in the lease prior to signing and that base rent is a starting—not all-inclusive—price. Compl. ¶¶ 83-86, 88, 93 (rents advertised as "starting from" or "beginning at" a particular price).

8

As Defendants explain, courts have dismissed virtually identical fee-disclosure cases involving hotels. *See* Mot. 23. Plaintiffs seek to ignore these cases on the basis that hotel reservations carry less severe financial consequences than apartment rentals, *see* Opp. 12, but that point cuts in Defendants' favor: hotel guests might overlook a particular charge, but given the financial significance of a lease and the comparatively extensive research that typically precedes apartment (versus hotel) selection, it is implausible to suggest that renters will skip over the sections of the lease relating to monthly cost before signing it. And Plaintiffs' bare speculation that some tiny number of naïve consumers "*could*" interpret "base rent" to mean only optional fees will be added, *id.* at 13 (emphasis added), does not show that the "base rent" advertisements are *likely* to mislead. *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005) (FTC must show statements are "*likely* to mislead" consumers (emphasis added)).

As for the CCPA, the analysis is the same. Accurate disclosure of "base rent," followed by accurate disclosure of additional costs, is not misleading. The case Colorado cites, Opp. at 28, did not concern a subsequent disclosure of *non*-misleading pricing information, but a one-time disclosure of pricing information that, while technically accurate, was still misleading. *State ex rel. Coffman v. Castle Law Grp., LLC*, 375 P.3d 128, 136 (Colo. 2016); *see id.* at 129 (misleading representation that price charged was "actual, necessary, and reasonable" reimbursement for services). That authority thus cannot save Colorado's claims. And Colorado misapprehends Defendants' argument concerning deceptiveness under the CCPA. It is not that the Attorney General must plead that advertisements *actually* deceived consumers, *see* Opp. 26, but that the possibility of

9

deception here is implausibly remote for the reasons described above. The FTC, which formerly used the same "tendency or capacity" test for deceptiveness as Colorado, has recognized that it does not extend to literally any statement that could conceivably be misconstrued by some subset of consumers. *See Matter of Heinz W. Kirchner*, 63 F.T.C. 1282, 1290 (1963), *aff'd*, 337 F.2d 751 (9th Cir. 1964).

## IV. The Complaint Fails to State a Claim Against Each Defendant.

Plaintiffs try to salvage their inadequate group pleading by pointing to the common enterprise doctrine. But as Defendants explained, Mot. 26, no binding decision has ever applied that doctrine to the types of claims Plaintiffs advance here. Moreover, Plaintiffs' allegations do not come close to satisfying the common enterprise doctrine.

While Plaintiffs point to Paragraph 20 of the Complaint, Opp. at 8, neither those conclusory allegations—nor any others—support that *each* defendant engaged in a common enterprise, such as by sharing office space and commingling funds. *See FTC v. Noland*, 2021 WL 289659, at *4 (D. Ariz. Jan. 28, 2021); *cf. FTC v. LoanPointe, LLC*, 2011 WL 4348304, at *10 (D. Utah Sept. 16, 2011) (considering "common control, office space, employees, [and] interrelated funds"), *aff'd*, 525 F. App'x 696 (10th Cir. 2013); Compl. ¶¶ 14-20, 114-15.

Plaintiffs otherwise fail to satisfy Rule 8 because the Complaint does not describe each company's role in the alleged conduct and does not make any "distinction as to what acts are attributable to whom," instead relying on the collective term "Greystar." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Nor do Plaintiffs attempt to explain how their pleadings satisfy the heightened standard under Rule 9(b) for CCPA

10

claims. Regardless of how the CCPA defines "Person," by failing to distinguish between Defendants, Plaintiffs have failed to allege the "identity of the party making the false statements." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

V. **The Court Lacks Personal Jurisdiction over All Defendants Except for Greystar Management Services, LLC and GREP Southwest, LLC.**

The Court lacks jurisdiction over Greystar Real Estate Partners, LLC; GREP General Partner, LLC; Greystar RS National, LLC; and Greystar California, Inc. because those entities conduct no business in Colorado. Plaintiffs do not seriously dispute that the Court lacks jurisdiction under the standard articulated in *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655, 661 (10th Cir. 2020); *see* Mot. 26-28. Instead, Plaintiffs claim that *GCIU*'s legal standard does not apply because it is limited to cases involving Rule 4(k)(2). Opp. at 4 n.3. But *GCIU* makes clear that it was interpreting the Due Process Clause, which applies in every case, not just Rule 4(k)(2) cases. 808 F. App'x at 661. Indeed, *GCIU* relied on *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000)—the very case that the FTC touts—in applying the same standard required by the Fourteenth Amendment in the nationwide service context. *GCIU*, 808 F. App'x at 665 n.3 ("The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, and both were designed to protect individual liberties from the same types of government infringement." (quoting *Peay*, 205 F.3d at 1212)).

In any event, even if *Peay*'s standard is looser, Plaintiffs' complaint does not satisfy it. The four Defendants do not have contact with the forum (or direct activities into it) and would be significantly inconvenienced by litigation in this jurisdiction. *Peay*, 205 F.3d at 1212; *see* Decl. ¶¶ 3-12, ECF No. 34-1. It is undisputed that none of these Defendants

11

"play any role in the creation or dissemination of advertisements for multifamily rental units in Colorado." Decl. ¶ 11. Judicial economy would not be affected because these entities are not implicated by Plaintiffs' allegations in any event. *Id.* ¶¶ 3-12.

Plaintiffs tellingly ignore the Declaration, but their failure (and inability) to rebut the facts in the Declaration means that their allegations cannot be assumed as true. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011) ("[E]ven well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit...."). Nor can they lump all the Defendants together as "Greystar" to support personal jurisdiction over each. *See, e.g.*, *Goodwin v. Bruggeman-Hatch*, 2014 WL 4243822, at *1 (D. Colo. Aug. 27, 2014) ("Plaintiff's sweeping, undifferentiated references to groups of defendants (or even more globally to 'defendants' generally) are insufficient to ... establish personal jurisdiction...."); *Abney v. Philip Morris USA Inc.*, 2024 WL 915008, at *5 (D.N.M. Mar. 4, 2024) ("[G]roup pleading ... is insufficient to establish personal jurisdiction over a particular defendant." (gathering authorities)). The four entities that, as the Declaration demonstrates, have little to no connection with Colorado and this case ought to be dismissed. That dismissal would not end—but would properly focus, consistent with the Constitution—this case.[4]

---

[4] Jurisdictional discovery is unwarranted because Plaintiffs have not even attempted to dispute the facts in Defendants' Declaration, and the "sum total of [their] request for discovery is a one-sentence argument" in a footnote that provides no "reason to believe that the statements in [the Declaration] are untrue" and without noting "any facts [they] believe[] jurisdictional discovery would likely reveal." *First Magnus Fin. Corp. v. Star Equity Funding, L.L.C.*, 2007 WL 635312, at *10 (D. Kan. Feb. 27, 2007).

12

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Motion to Dismiss, the Court should dismiss all claims against all Defendants for failure to state a claim and should dismiss Defendants except Greystar Management Services, LLC and GREP Southwest, LLC, for lack of personal jurisdiction.

Date: June 6, 2025

Respectfully submitted,

JENNER & BLOCK LLP

*/s/ Lindsay C. Harrison*
Lindsay C. Harrison
Elizabeth Henthorne
Hilary R. Ledwell
Joshua J.W. Armstrong
1099 New York Ave., NW, Suite 900
Washington, DC 20001
(202) 639-6000
LHarrison@Jenner.com
BHenthorne@Jenner.com
HLedwell@Jenner.com
JArmstrong@Jenner.com

Jocelyn A. Sitton
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
JSitton@Jenner.com

*Attorneys for Defendants*

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed using the Court's CM/ECF system. Service was effected by and through the Court's CM/ECF system.

Dated: June 6, 2025                              */s/ Lindsay C. Harrison*
                                                  Lindsay C. Harrison