**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>STATE OF COLORADO, *ex rel.* PHILIP J. WEISER, ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>GREYSTAR REAL ESTATE PARTNERS, LLC, d/b/a "Greystar," a limited liability company;<br><br>GREP GENERAL PARTNER, LLC, d/b/a "Greystar," a limited liability company;<br><br>GREYSTAR MANAGEMENT SERVICES, LLC, d/b/a "Greystar," a limited liability company;<br><br>GREYSTAR RS NATIONAL, LLC, d/b/a "Greystar," a limited liability company;<br><br>GREYSTAR CALIFORNIA, INC., d/b/a "Greystar," a corporation; and<br><br>GREP SOUTHWEST, LLC, d/b/a "Greystar," a limited liability company,<br><br>Defendants. | Case No. 1:25-cv-00165-CNS-STV<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |

Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the State of Colorado *ex rel.* Philip J. Weiser, Attorney General ("State of Colorado") (collectively, "Plaintiffs"), filed their Complaint for Permanent Injunction, Monetary Judgment, Civil Penalty Judgment, and Other Relief ("Complaint"), for a permanent injunction, monetary relief, and other relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821, and the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq*. Plaintiffs and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the GLB Act, 15 U.S.C. § 6821 *et seq.*, and the CCPA, Colo. Rev. Stat. § 6-1-101 *et seq*, in their Home Rental Services, including by charging mandatory hidden fees.

3. Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5. Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

6. This Order does not otherwise affect Defendants' obligations under applicable state laws.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Charge**," "**Charged**," or "**Charging**" means any attempt to collect money or other consideration from a consumer, including causing the disclosure for purposes of payment of customer information of a financial institution, such as a consumer's bank account, credit card, or debit card numbers.

B. "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is easily noticeable (i.e., difficult to miss) and easily understandable by reasonable consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for reasonable consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the

Internet or software, the disclosure must be unavoidable.

5. The disclosure must use diction and syntax understandable to reasonable consumers and must appear in each language in which the representation that requires the disclosure appears.

6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "reasonable consumers" includes members of that group.

C. "**Client**" means any Person for whom any Defendant provides Home Rental Services, where such services include at least one of the following: advertising, marketing, promoting, offering, leasing, or Charging tenants or prospective tenants. "**Client**" also includes any Person for whom any Defendant communicates with tenants or prospective tenants regarding any of the services listed in this Definition.

D. "**Compliance Date"** means 90 days after Defendants sign this Order.

E. "**Defendants**" means Greystar Real Estate Partners, LLC, d/b/a "Greystar," GREP General Partner, LLC, d/b/a "Greystar," Greystar Management Services, LLC, d/b/a "Greystar," Greystar RS National, LLC, d/b/a "Greystar," Greystar California, Inc., d/b/a

"Greystar," and GREP Southwest, LLC, d/b/a "Greystar," and their successors and assigns, individually, collectively, or in any combination.

F. "**Home Rental Services**" means all goods and services related to leasing or managing any Property, including but not limited to advertising, marketing, promoting, or offering any Property.

G. "**Person**" means any natural person, organization, or legal entity including a corporation, limited liability company, partnership, proprietorship, association, cooperative, governmental subdivision or agency, or any other group or combination acting as an entity.

H. "**Pricing Information**" means any information related to an amount a consumer may pay.

I. "**Property**" means any residential rental units, located in the United States, for which any Defendant provides Home Rental Services; or over which any Defendant exercises effective control.

J. "**Third-Party Marketer**" means any third party that advertises, markets, promotes, or offers a Property, using information provided by a Defendant or Client.

K. "**Total Monthly Leasing Price**" means the entire monthly amount a tenant must pay to lease a Property, including all mandatory monthly costs or fees associated with the Property, and excluding variable utility costs and optional fees.

## ORDER

### I. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS ORDERED that, no later than the Compliance Date, Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation

with any of them, who receive actual notice of this Order, in connection with Home Rental Services, are permanently restrained and enjoined from misrepresenting, expressly or by implication, to the extent that Defendants have control within the format in which the representation is made:

A. The Total Monthly Leasing Price;

B. The following Pricing Information:

1. The existence or amount of any fees or costs;
2. Whether fees or costs are optional or required;
3. The nature and purpose of any fees or costs that consumers may be Charged;
4. If or when consumers will be Charged any fees or costs; or

C. Any other material aspect of Defendants' Home Rental Services.

## II. REQUIRED DISCLOSURES

IT IS FURTHER ORDERED that, no later than the Compliance Date, Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, in connection with Home Rental Services, are permanently restrained and enjoined from:

A. Making any representation, expressly or by implication, to the extent that Defendants have control within the format in which the representation is made, regarding an amount a consumer must pay to lease a Property, without displaying the Total Monthly Leasing Price more prominently than any other representation regarding Pricing Information, *provided, however*, that this provision does not apply to responses to a resident's inquiries about a specific or itemized fee;

B. Making any representation, expressly or by implication, to the extent that Defendants have control within the format in which the representation is made, regarding a particular fee or cost, without disclosing, Clearly and Conspicuously, the nature and purpose of the fee or cost, the identity of any good or service for which the fee or cost is Charged, the amount of the fee or cost, and whether the fee or cost is mandatory, *provided, however*, that this provision does not apply to responses to a resident's inquiries about a specific or itemized fee; or

C. Charging or causing any Charge for an initial payment or deposit without disclosing, Clearly and Conspicuously:

1. The Total Monthly Leasing Price; and
2. The following Pricing Information:
   - i. The existence and amount of any fees or costs;
   - ii. Whether the fees or costs are optional or required;
   - iii. The nature and purpose of the fees or costs that consumers may be Charged;
   - iv. The timing and frequency at which consumers may be Charged the fees or costs; and
   - v. Whether the amount of the fees or costs are variable and (other than for variable utility costs) the manner in which any variable amount is calculated; and
   - vi. To the extent that variable utility costs are shared among tenants, the method used to apportion the costs among tenants.

## III. INJUNCTION RELATING TO OBTAINING CUSTOMER FINANCIAL INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A. Obtaining or attempting to obtain customer information of a financial institution (including bank account, credit card, and debit card numbers) from a consumer by making false, fictitious, or fraudulent representations to any consumer or financial institution; or

B. Violating the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801–09, 6821–27, a copy of which is attached to this Order as Attachment A.

## IV. MONETARY JUDGMENTS

IT IS FURTHER ORDERED that:

A. Judgment in the amount of $23 million Dollars ($23,000,000) in favor of the Commission, is entered against Defendants, jointly and severally, as monetary relief.

B. Judgment in the amount of $1 million Dollars ($1,000,000) in favor of the State of Colorado ex rel Philip J. Weiser, is entered against Defendants, jointly and severally, as monetary relief. The Colorado Attorney General shall cause the payment to be held, along with any interest thereon, in trust by the Colorado Attorney General to be used in the Colorado Attorney General's sole discretion for reimbursement of the Attorney General's actual costs and attorneys' fees, and for future consumer protection or antitrust enforcement, consumer education, or public welfare purposes.

C. Defendants are ordered to pay to the Commission $23 million Dollars

($23,000,000). Such payment must be made within thirty (30) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

D. Defendants are ordered to pay to the State of Colorado ex rel Philip J. Weiser $1 Million Dollars ($1,000,000). Such payment must be made within thirty (30) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Colorado Attorney General.

## V. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of Plaintiffs in a proceeding to enforce Plaintiffs' rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Each Defendant acknowledges that Defendant's Employer Identification Number, Social Security Number, or other Taxpayer Identification Number ("TIN"), including all TINs that Defendants previously provided, may be used by the Commission for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in

accordance with 31 U.S.C. § 7701.

E. All money received by the Commission pursuant to Section IV.A of this Order may be deposited into a fund administered by the Commission or its designee, to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed:

1. The Commission may apply any remaining money received pursuant to Section IV.A for such related relief as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for relief is to be deposited to the U.S. Treasury; and
2. Defendants have no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Section.

## VI. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys and all others in active concert or participation with any of them, who receive notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A. Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Defendants represent that they have received the Commission's request for customer information and will provide the requested information to the Commission within 14 days of entry of this Order, subject to reasonable extensions at the discretion of the Commission's representatives, which shall not be unreasonably withheld. If a representative of the Commission requests in writing any additional information related to

redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days, subject to reasonable extensions at the discretion of the Commission's representatives, which shall not be unreasonably withheld;

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information or any data that enables access to a customer's account (including a credit card, bank account, or other financial account) that any Defendant obtained prior to entry of this Order in connection with providing Home Rental Services, unless that Defendant can show the information is necessary to provide products or services requested of that Defendant by that Defendant's customers; and

C. Failing to destroy such customer information in all forms in their possession, custody, or control within 45 days after receipt of written direction to do so from a representative of the Plaintiffs.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within 7 days of entry of this Order, must submit to the Plaintiffs an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 10 years after entry of this Order, each Defendant must deliver a copy of this

Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees with managerial responsibilities for Home Rental Services and all agents and representatives who participate in leasing, advertising, and marketing; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to Plaintiffs:

A. One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury. Each Defendant must:

1. Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of Plaintiffs may use to communicate with that Defendant;
2. Identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;
3. Describe the activities of each business, to the extent those activities relate to Home Rental Services, and the involvement of any other Defendant;
4. Describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

5. Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to Plaintiffs.

B. For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Any designated point of contact; or
2. The structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C. Each Defendant must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC 20580. The subject line must begin: FTC v. Greystar Real Estate Partners LLC, X250023.

F. Unless otherwise directed by a State of Colorado representative in writing, all submissions to the State of Colorado pursuant to this Order must be emailed to Sarah.Silver@coag.gov and Miriam.Burnett@coag.gov or sent by overnight courier to: Sarah Silver, Civil Rights Unit (Housing Protection), Consumer Protection Section, Colorado Department of Law, 1300 Broadway, 9th floor, Denver, CO 80203.

## IX. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendants, in connection with providing Home Rental Services, must create and retain the following records:

A. Accounting records showing the revenues from all goods or services sold;

B. Personnel records showing, for each person providing services for whom records are maintained by Greystar in the ordinary course of business, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. Records of all consumer complaints and refund requests concerning Sections I.A-B and II.A-C, captured on Defendants' corporate platforms, systems, and devices that are received in the ordinary course of business, any response, and all material documents, including related communications;

D. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs; and

E. A copy of each materially unique advertisement created by or at the direction of Defendants concerning the subject matter of the Order, except:

1. For advertisements or other marketing materials that are dynamically generated, whether disseminated by a Defendant, a Client, or a Third-Party Marketer, Defendants may instead:

   i. Retain (a) any components supplied by or on behalf of Defendant to the Client or Third-Party Marketer for generating such advertisements or other marketing material (e.g., text, images, audiovisual elements); (b) any dissemination data and ad performance reporting related to such advertisements or other marketing materials that Defendants access and use; and (c) any ad monitoring reports related to such advertisements or other marketing materials that Defendants access and use; and

   ii. Create a weekly representative example of an advertisement or other marketing material on each marketing channel, which may, at the Plaintiffs' discretion and with or without notice, be for a property or advertisement selected by the Plaintiffs.

## X. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A. Within 14 days of receipt of a written request from a representative of either Plaintiff, each Defendant must: submit additional compliance reports or other requested

information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, Plaintiffs are authorized to communicate directly with each Defendant. Defendants must permit representatives of Plaintiffs to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. Plaintiffs may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

**XI. RETENTION OF JURISDICTION**

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED this 12th day of December 2025.

BY THE COURT

Charlotte N. Sweeney
United States District Judge

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

______________________________ Date: 12/12/2025

SAMANTHA BENNETT (NY Bar No. 5132063)
ROBERTA DIANE TONELLI (Cal. Bar. No. 278738)
SPENCER SCOVILLE (D.C. Bar No. 1766898)
ALYSSA J.H. WU (Cal. Bar No. 339651)
Attorneys
Federal Trade Commission
Western Region San Francisco
90 7th Street, Suite 14-300
San Francisco, CA 94103
Tel.: (415) 848-5100
Email: sbennett@ftc.gov, rtonelli@ftc.gov, sscoville@ftc.gov, awu1@ftc.gov

**FOR PLAINTIFF:**

**STATE OF COLORADO**

PHILIP J. WEISER
Attorney General

Date: 12/2/25

JULIANNE B. CRAMER, 57111
First Assistant Attorney General
ADAM T. RICE, 53963
SARAH SILVER, 58465
Assistant Attorneys General
Civil Rights Unit, Housing Protection
Consumer Protection Section
1300 Broadway, 9th floor
Denver, CO 80203
Tel: (720) 508-6000
Email: Julie.Cramer@coag.gov; Adam.Rice@coag.gov; Sarah.Silver@coag.gov

**FOR DEFENDANTS:**

_______________________________ Date: 9/30/25

LINDSAY C. HARRISON
ELIZABETH HENTHORNE
CAROLINE CEASE
JENNER & BLOCK LLP
1099 New York Ave. NW
Suite 900
Washington, DC 20001
202-639-6000
lharrison@jenner.com
COUNSEL for Greystar Real Estate Partners, LLC, GREP General Partner, LLC, Greystar Management Services, LLC, Greystar RS National, LLC, Greystar California, Inc., and GREP Southwest, LLC

**DEFENDANT: GREYSTAR REAL ESTATE PARTNERS, LLC**

______________________________ Date: 11-13-2025

ANDREW R. LIVINGSTONE AS AN OFFICER OF
GREYSTAR REAL ESTATE PARTNERS, LLC

**DEFENDANT: GREP GENERAL PARTNER, LLC**

______________________________ Date: 11-13-2025

ANDREW R. LIVINGSTONE AS CHIEF EXECUTIVE OFFICER OF
GREP GENERAL PARTNER, LLC

**DEFENDANT: GREYSTAR MANAGEMENT SERVICES, LLC**

______________________________ Date: 11-13-2025

ANDREW R. LIVINGSTONE AS AN OFFICER OF
GREYSTAR MANAGEMENT SERVICES, LLC

**DEFENDANT: GREYSTAR RS NATIONAL, LLC**

______________________________ Date: 11-13-2025

ANDREW R. LIVINGSTONE AS AN OFFICER OF
GREYSTAR RS NATIONAL, LLC

**DEFENDANT: GREYSTAR CALIFORNIA, INC.**

______________________________ Date: 11-13-2025

ANDREW R. LIVINGSTONE AS AN OFFICER OF
GREYSTAR CALIFORNIA, INC.

**DEFENDANT: GREP SOUTHWEST, LLC**

______________________________ Date: 11-13-2025

ANDREW R. LIVINGSTONE AS AN OFFICER OF
GREP SOUTHWEST, LLC

# ATTACHMENT A

# COPY OF
# THE GRAMM-LEACH-BLILEY ACT
# 15 U.S.C. §§ 6801-6809, 6821-6827

**15 USC Ch. 94: PRIVACY**

**From Title 15—COMMERCE AND TRADE**

## CHAPTER 94—PRIVACY

SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

Sec.
6801. Protection of nonpublic personal information.
6802. Obligations with respect to disclosures of personal information.
6803. Disclosure of institution privacy policy.
6804. Rulemaking.
6805. Enforcement.
6806. Relation to other provisions.
6807. Relation to State laws.
6808. Study of information sharing among financial affiliates.
6809. Definitions.

SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION

6821. Privacy protection for customer information of financial institutions.
6822. Administrative enforcement.
6823. Criminal penalty.
6824. Relation to State laws.
6825. Agency guidance.
6826. Reports.
6827. Definitions.

### SUBCHAPTER I—DISCLOSURE OF NONPUBLIC PERSONAL INFORMATION

## §6801. Protection of nonpublic personal information

**(a) Privacy obligation policy**

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

**(b) Financial institutions safeguards**

In furtherance of the policy in subsection (a), each agency or authority described in section 6805(a) of this title, other than the Bureau of Consumer Financial Protection, shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards—

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

(Pub. L. 106–102, title V, §501, Nov. 12, 1999, 113 Stat. 1436; Pub. L. 111–203, title X, §1093(1), July 21, 2010, 124 Stat. 2095.)

### Editorial Notes

### Amendments

**2010**—Subsec. (b). Pub. L. 111–203 inserted ", other than the Bureau of Consumer Financial Protection," after "section 6805(a) of this title" in introductory provisions.

### Statutory Notes and Related Subsidiaries

#### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

#### Effective Date

Pub. L. 106–102, title V, §510, Nov. 12, 1999, 113 Stat. 1445, provided that: "This subtitle [subtitle A (§§501–510) of title V of Pub. L. 106–102, enacting this subchapter and amending section 1681s of this title] shall take effect 6 months after the date on which rules are required to be prescribed under section 504(a)(3) [15 U.S.C. 6804(a)(3)], except—

"(1) to the extent that a later date is specified in the rules prescribed under section 504; and

"(2) that sections 504 [15 U.S.C. 6804] and 506 [enacting section 6806 of this title and amending section 1681s of this title] shall be effective upon enactment [Nov. 12, 1999]."

## §6802. Obligations with respect to disclosures of personal information

**(a) Notice requirements**

Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

**(b) Opt out**

**(1) In general**

A financial institution may not disclose nonpublic personal information to a nonaffiliated third party unless—

(A) such financial institution clearly and conspicuously discloses to the consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, that such information may be disclosed to such third party;

(B) the consumer is given the opportunity, before the time that such information is initially disclosed, to direct that such information not be disclosed to such third party; and

(C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

**(2) Exception**

This subsection shall not prevent a financial institution from providing nonpublic personal information to a nonaffiliated third party to perform services for or functions on behalf of the financial institution, including marketing of the financial institution's own products or services, or financial products or services offered pursuant to joint agreements between two or more financial institutions that comply with the requirements imposed by the regulations prescribed under section 6804 of this title, if the financial institution fully discloses the providing of such information and enters into a contractual agreement with the third party that requires the third party to maintain the confidentiality of such information.

**(c) Limits on reuse of information**

Except as otherwise provided in this subchapter, a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.

**(d) Limitations on the sharing of account number information for marketing purposes**

A financial institution shall not disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a credit card account, deposit account, or transaction account of a consumer to any nonaffiliated third party for use in telemarketing, direct mail marketing, or other marketing through electronic mail to the consumer.

**(e) General exceptions**

Subsections (a) and (b) shall not prohibit the disclosure of nonpublic personal information—

(1) as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer, or in connection with—

(A) servicing or processing a financial product or service requested or authorized by the consumer;

(B) maintaining or servicing the consumer's account with the financial institution, or with another entity as part of a private label credit card program or other extension of credit on behalf of such entity; or

(C) a proposed or actual securitization, secondary market sale (including sales of servicing rights), or similar transaction related to a transaction of the consumer;

(2) with the consent or at the direction of the consumer;

(3)(A) to protect the confidentiality or security of the financial institution's records pertaining to the consumer, the service or product, or the transaction therein; (B) to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability; (C) for required institutional risk control, or for resolving customer disputes or inquiries; (D) to persons holding a legal or beneficial interest relating to the consumer; or (E) to persons acting in a fiduciary or representative capacity on behalf of the consumer;

(4) to provide information to insurance rate advisory organizations, guaranty funds or agencies, applicable rating agencies of the financial institution, persons assessing the institution's compliance with industry standards, and the institution's attorneys, accountants, and auditors;

(5) to the extent specifically permitted or required under other provisions of law and in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C. 3401 et seq.], to law enforcement agencies (including the Bureau of Consumer Financial Protection [1] a Federal functional regulator, the Secretary of the Treasury with respect to subchapter II of chapter 53 of title 31, and chapter 2 of title I of Public Law 91–508 (12 U.S.C. 1951–1959), a State insurance authority, or the Federal Trade Commission), self-regulatory organizations, or for an investigation on a matter related to public safety;

(6)(A) to a consumer reporting agency in accordance with the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], or (B) from a consumer report reported by a consumer reporting agency;

(7) in connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a business or operating unit if the disclosure of nonpublic personal information concerns solely consumers of such business or unit; or

(8) to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

(Pub. L. 106–102, title V, §502, Nov. 12, 1999, 113 Stat. 1437; Pub. L. 111–203, title X, §1093(2), July 21, 2010, 124 Stat. 2095.)

## Editorial Notes

## References in Text

This subchapter, referred to in subsecs. (a) and (c), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Right to Financial Privacy Act of 1978, referred to in subsec. (e)(5), is title XI of Pub. L. 95–630, Nov. 10, 1978, 92 Stat. 3697, which is classified generally to chapter 35 (§3401 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 3401 of Title 12 and Tables.

Chapter 2 of title I of Public Law 91–508, referred to in subsec. (e)(5), is chapter 2 (§§121–129) of title I of Pub. L. 91–508, Oct. 26, 1970, 84 Stat. 1116, which is classified generally to chapter 21 (§1951 et seq.) of Title 12, Banks and Banking. For complete classification of chapter 2 to the Code, see Tables.

The Fair Credit Reporting Act, referred to in subsec. (e)(6)(A), is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

## Amendments

**2010**—Subsec. (e)(5). Pub. L. 111–203 inserted "the Bureau of Consumer Financial Protection" after "(including".

## Statutory Notes and Related Subsidiaries

## Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

[1] *So in original. Probably should be followed by a comma.*

# §6803. Disclosure of institution privacy policy

**(a) Disclosure required**

At the time of establishing a customer relationship with a consumer and not less than annually during the continuation of such relationship, a financial institution shall provide a clear and conspicuous disclosure to such consumer, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, of such financial institution's policies and practices with respect to—

(1) disclosing nonpublic personal information to affiliates and nonaffiliated third parties, consistent with section 6802 of this title, including the categories of information that may be disclosed;

(2) disclosing nonpublic personal information of persons who have ceased to be customers of the financial institution; and

(3) protecting the nonpublic personal information of consumers.

**(b) Regulations**

Disclosures required by subsection (a) shall be made in accordance with the regulations prescribed under section 6804 of this title.

**(c) Information to be included**

The disclosure required by subsection (a) shall include—

(1) the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties, other than agents of the institution, consistent with section 6802 of this title, and including —

(A) the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided pursuant to section 6802(e) of this title; and

(B) the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution;

(2) the categories of nonpublic personal information that are collected by the financial institution;

(3) the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information in accordance with section 6801 of this title; and

(4) the disclosures required, if any, under section 1681a(d)(2)(A)(iii) of this title.

**(d) Exemption for certified public accountants**

**(1) In general**

The disclosure requirements of subsection (a) do not apply to any person, to the extent that the person is—

(A) a certified public accountant;

(B) certified or licensed for such purpose by a State; and

(C) subject to any provision of law, rule, or regulation issued by a legislative or regulatory body of the State, including rules of professional conduct or ethics, that prohibits disclosure of nonpublic personal information without the knowing and expressed consent of the consumer.

**(2) Limitation**

Nothing in this subsection shall be construed to exempt or otherwise exclude any financial institution that is affiliated or becomes affiliated with a certified public accountant described in paragraph (1) from any provision of this section.

**(3) Definitions**

For purposes of this subsection, the term "State" means any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, the Trust Territory of the Pacific Islands, the Virgin Islands, or the Northern Mariana Islands.

**(e) Model forms**

**(1) In general**

The agencies referred to in section 6804(a)(1) of this title shall jointly develop a model form which may be used, at the option of the financial institution, for the provision of disclosures under this section.

**(2) Format**

A model form developed under paragraph (1) shall—

(A) be comprehensible to consumers, with a clear format and design;

(B) provide for clear and conspicuous disclosures;

(C) enable consumers easily to identify the sharing practices of a financial institution and to compare privacy practices among financial institutions; and

(D) be succinct, and use an easily readable type font.

**(3) Timing**

A model form required to be developed by this subsection shall be issued in proposed form for public comment not later than 180 days after October 13, 2006.

**(4) Safe harbor**

Any financial institution that elects to provide the model form developed by the agencies under this subsection shall be deemed to be in compliance with the disclosures required under this section.

**(f) Exception to annual notice requirement**

A financial institution that—

(1) provides nonpublic personal information only in accordance with the provisions of subsection (b)(2) or (e) of section 6802 of this title or regulations prescribed under section 6804(b) of this title, and

(2) has not changed its policies and practices with regard to disclosing nonpublic personal information from the policies and practices that were disclosed in the most recent disclosure sent to consumers in accordance with this section,

shall not be required to provide an annual disclosure under this section until such time as the financial institution fails to comply with any criteria described in paragraph (1) or (2).

(Pub. L. 106–102, title V, §503, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 109–351, title VI, §609, title VII, §728, Oct. 13, 2006, 120 Stat. 1983, 2003; Pub. L. 114–94, div. G, title LXXV, §75001, Dec. 4, 2015, 129 Stat. 1787.)

### Editorial Notes

### Amendments

**2015**—Subsec. (f). Pub. L. 114–94 added subsec. (f).

**2006**—Pub. L. 109–351 designated concluding provisions of subsec. (a) as (b), inserted heading, substituted "Disclosures required by subsection (a)" for "Such disclosures", redesignated former subsec. (b) as (c), and added subsecs. (d) and (e).

### Executive Documents

### Termination of Trust Territory of the Pacific Islands

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

## §6804. Rulemaking

**(a) Regulatory authority**

**(1) Rulemaking**

**(A) In general**

Except as provided in subparagraph (C), the Bureau of Consumer Financial Protection and the Securities and Exchange Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to their respective jurisdiction under section 6805 of this title (and notwithstanding subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]), except that the Bureau of Consumer Financial Protection shall not have authority to prescribe regulations with respect to the standards under section 6801 of this title.

**(B) CFTC**

The Commodity Futures Trading Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to financial institutions and other persons subject to the jurisdiction of the Commodity Futures Trading Commission under section 7b–2 of title 7.

**(C) Federal Trade Commission authority**

Notwithstanding the authority of the Bureau of Consumer Financial Protection under subparagraph (A), the Federal Trade Commission shall have authority to prescribe such regulations as may be necessary to carry out the purposes of this subchapter with respect to any financial institution that is a person described in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)].

**(D) Rule of construction**

Nothing in this paragraph shall be construed to alter, affect, or otherwise limit the authority of a State insurance authority to adopt regulations to carry out this subchapter.

**(2) Coordination, consistency, and comparability**

Each of the agencies authorized under paragraph (1) to prescribe regulations shall consult and coordinate with the other such agencies and, as appropriate, and with [1] representatives of State insurance authorities designated by the National Association of Insurance Commissioners, for the purpose of assuring, to the extent possible, that the regulations prescribed by each such agency are consistent and comparable with the regulations prescribed by the other such agencies.

**(3) Procedures and deadline**

Such regulations shall be prescribed in accordance with applicable requirements of title 5.

**(b) Authority to grant exceptions**

The regulations prescribed under subsection (a) may include such additional exceptions to subsections (a) through (d) of section 6802 of this title as are deemed consistent with the purposes of this subchapter.

(Pub. L. 106–102, title V, §504, Nov. 12, 1999, 113 Stat. 1439; Pub. L. 111–203, title X, §1093(3), July 21, 2010, 124 Stat. 2095.)

### Editorial Notes

## References in Text

This subchapter, referred to in subsecs. (a)(1) and (b), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Consumer Financial Protection Act of 2010, referred to in subsec. (a)(1)(A), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitle B (§§1021–1029A) of the Act is classified generally to part B (§5511 et seq.) of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitle B to the Code, see Tables.

## Amendments

**2010**—Subsec. (a)(1), (2). Pub. L. 111–203, §1093(3)(A), added pars. (1) and (2) and struck out former pars. (1) and (2) which related, respectively, to rulemaking by the Federal banking agencies, the National Credit Union Administration, the Secretary of the Treasury, the Securities and Exchange Commission, and the Federal Trade Commission, and consultation and coordination among these agencies and authorities to assure consistency and comparability of regulations.

Subsec. (a)(3). Pub. L. 111–203, §1093(3)(B), struck out "and shall be issued in final form not later than 6 months after November 12, 1999" after "title 5".

### Statutory Notes and Related Subsidiaries

## Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

[1] *So in original. Probably should be "and, as appropriate, with".*

# §6805. Enforcement

**(a) In general**

Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:

(1) Under section 1818 of title 12, by the appropriate Federal banking agency, as defined in section 1813(q) of title 12, in the case of—

(A) national banks, Federal branches and Federal agencies of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], and bank holding companies and their

nonbank subsidiaries or affiliates (except brokers, dealers, persons providing insurance, investment companies, and investment advisers);

(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), insured State branches of foreign banks, and any subsidiaries of such entities (except brokers, dealers, persons providing insurance, investment companies, and investment advisers); and

(D) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, and any subsidiaries of such savings associations (except brokers, dealers, persons providing insurance, investment companies, and investment advisers).

(2) Under the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Board of the National Credit Union Administration with respect to any federally insured credit union, and any subsidiaries of such an entity.

(3) Under the Securities Exchange Act of 1934 [15 U.S.C. 78a et seq.], by the Securities and Exchange Commission with respect to any broker or dealer.

(4) Under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], by the Securities and Exchange Commission with respect to investment companies.

(5) Under the Investment Advisers Act of 1940 [15 U.S.C. 80b–1 et seq.], by the Securities and Exchange Commission with respect to investment advisers registered with the Commission under such Act.

(6) Under State insurance law, in the case of any person engaged in providing insurance, by the applicable State insurance authority of the State in which the person is domiciled, subject to section 6701 of this title.

(7) Under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], by the Federal Trade Commission for any other financial institution or other person that is not subject to the jurisdiction of any agency or authority under paragraphs (1) through (6) of this subsection.

(8) Under subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau of Consumer Financial Protection, in the case of any financial institution and other covered person or service provider that is subject to the jurisdiction of the Bureau and any person subject to this subchapter, but not with respect to the standards under section 6801 of this title.

**(b) Enforcement of section 6801**

**(1) In general**

Except as provided in paragraph (2), the agencies and authorities described in subsection (a), other than the Bureau of Consumer Financial Protection, shall implement the standards prescribed under section 6801(b) of this title in the same manner, to the extent practicable, as standards prescribed pursuant to section 1831p–1(a) of title 12 are implemented pursuant to such section.

**(2) Exception**

The agencies and authorities described in paragraphs (3), (4), (5), (6), and (7) of subsection (a) shall implement the standards prescribed under section 6801(b) of this title by rule with respect to the financial institutions and other persons subject to their respective jurisdictions under subsection (a).

**(c) Absence of State action**

If a State insurance authority fails to adopt regulations to carry out this subchapter, such State shall not be eligible to override, pursuant to section 1831x(g)(2)(B)(iii) of title 12, the insurance customer protection regulations prescribed by a Federal banking agency under section 1831x(a) of title 12.

**(d) Definitions**

The terms used in subsection (a)(1) that are not defined in this subchapter or otherwise defined in section 1813(s) of title 12 shall have the same meaning as given in section 3101 of title 12.

(Pub. L. 106–102, title V, §505, Nov. 12, 1999, 113 Stat. 1440; Pub. L. 111–203, title X, §1093(4), (5), July 21, 2010, 124 Stat. 2096, 2097.)

## Editorial Notes

## References in Text

The Consumer Financial Protection Act of 2010, referred to in subsec. (a), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitles B (§§1021–1029A) and E (§§1051–1058) of the Act are classified generally to parts B (§5511 et seq.) and E (§5561 et seq.), respectively, of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitles B and E to the Code, see Tables.

This subchapter, referred to in subsecs. (a), (c), and (d), was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (a)(1)(B), is classified to subchapter I (§601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (a)(2), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

The Securities Exchange Act of 1934, referred to in subsec. (a)(3), is act June 6, 1934, ch. 404, 48 Stat. 881, which is classified principally to chapter 2B (§78a et seq.) of this title. For complete classification of this Act to the Code, see section 78a of this title and Tables.

The Investment Company Act of 1940, referred to in subsec. (a)(4), is title I of act Aug. 22, 1940, ch. 686, 54 Stat. 789, which is classified generally to subchapter I (§80a–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80a–51 of this title and Tables.

The Investment Advisers Act of 1940, referred to in subsec. (a)(5), is title II of act Aug. 22, 1940, ch. 686, 54 Stat. 847, which is classified generally to subchapter II (§80b–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80b–20 of this title and Tables.

The Federal Trade Commission Act, referred to in subsec. (a)(7), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

### Amendments

**2010**—Subsec. (a). Pub. L. 111–203, §1093(4)(A), substituted "Subject to subtitle B of the Consumer Financial Protection Act of 2010, this subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:" for "This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law, as follows:".

Subsec. (a)(1). Pub. L. 111–203, §1093(4)(B)(i), inserted "by the appropriate Federal banking agency, as defined in section 1813(q) of title 12," before "in the case of—".

Subsec. (a)(1)(A). Pub. L. 111–203, §1093(4)(B)(ii), struck out ", by the Office of the Comptroller of the Currency" before semicolon at end.

Subsec. (a)(1)(B). Pub. L. 111–203, §1093(4)(B)(iii), struck out ", by the Board of Governors of the Federal Reserve System" before semicolon at end.

Subsec. (a)(1)(C). Pub. L. 111–203, §1093(4)(B)(iv), struck out ", by the Board of Directors of the Federal Deposit Insurance Corporation" before "; and".

Subsec. (a)(1)(D). Pub. L. 111–203, §1093(4)(B)(v), struck out ", by the Director of the Office of Thrift Supervision" before period at end.

Subsec. (a)(8). Pub. L. 111–203, §1093(4)(C), added par. (8).

Subsec. (b)(1). Pub. L. 111–203, §1093(5), inserted ", other than the Bureau of Consumer Financial Protection," before "shall implement the standards".

#### Statutory Notes and Related Subsidiaries

### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## §6806. Relation to other provisions

Except for the amendments made by subsections (a) and (b), nothing in this chapter shall be construed to modify, limit, or supersede the operation of the Fair Credit Reporting Act [15 U.S.C. 1681 et seq.], and no inference shall be drawn on the basis of the provisions of this chapter regarding whether information is transaction or experience information under section 603 of such Act [15 U.S.C. 1681a].

(Pub. L. 106–102, title V, §506(c), Nov. 12, 1999, 113 Stat. 1442.)

#### Editorial Notes

### References in Text

Amendments made by subsections (a) and (b), referred to in text, means amendments made by section 506(a) and (b) of Pub. L. 106–102, which amended section 1681s of this title.

This chapter, referred to in text, was in the original "this title", meaning title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which enacted this chapter and amended section 1681s of this title. For complete classification of title V to the Code, see Tables.

The Fair Credit Reporting Act, referred to in text, is title VI of Pub. L. 90–321, as added by Pub. L. 91–508, title VI, §601, Oct. 26, 1970, 84 Stat. 1127, which is classified generally to subchapter III (§1681 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

## §6807. Relation to State laws

**(a) In general**

This subchapter and the amendments made by this subchapter shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

**(b) Greater protection under State law**

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter and the amendments made by this subchapter, as determined by the Bureau of Consumer Financial Protection, after consultation with the agency or authority with jurisdiction under section 6805(a) of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §507, Nov. 12, 1999, 113 Stat. 1442; Pub. L. 111–203, title X, §1093(6), July 21, 2010, 124 Stat. 2097.)

### Editorial Notes

### References in Text

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

### Amendments

**2010**—Subsec. (b). Pub. L. 111–203 substituted "Bureau of Consumer Financial Protection" for "Federal Trade Commission".

### Statutory Notes and Related Subsidiaries

### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

## §6808. Study of information sharing among financial affiliates

**(a) In general**

The Secretary of the Treasury, in conjunction with the Federal functional regulators and the Federal Trade Commission, shall conduct a study of information sharing practices among financial institutions and their affiliates. Such study shall include—

(1) the purposes for the sharing of confidential customer information with affiliates or with nonaffiliated third parties;
(2) the extent and adequacy of security protections for such information;
(3) the potential risks for customer privacy of such sharing of information;
(4) the potential benefits for financial institutions and affiliates of such sharing of information;
(5) the potential benefits for customers of such sharing of information;
(6) the adequacy of existing laws to protect customer privacy;
(7) the adequacy of financial institution privacy policy and privacy rights disclosure under existing law;
(8) the feasibility of different approaches, including opt-out and opt-in, to permit customers to direct that confidential information not be shared with affiliates and nonaffiliated third parties; and

(9) the feasibility of restricting sharing of information for specific uses or of permitting customers to direct the uses for which information may be shared.

**(b) Consultation**

The Secretary shall consult with representatives of State insurance authorities designated by the National Association of Insurance Commissioners, and also with financial services industry, consumer organizations and privacy groups, and other representatives of the general public, in formulating and conducting the study required by subsection (a).

**(c) Report**

On or before January 1, 2002, the Secretary shall submit a report to the Congress containing the findings and conclusions of the study required under subsection (a), together with such recommendations for legislative or administrative action as may be appropriate.

(Pub. L. 106–102, title V, §508, Nov. 12, 1999, 113 Stat. 1442.)

## §6809. Definitions

As used in this subchapter:

**(1) Federal banking agency**

The term "Federal banking agency" has the same meaning as given in section 1813 of title 12.

**(2) Federal functional regulator**

The term "Federal functional regulator" means—
(A) the Board of Governors of the Federal Reserve System;
(B) the Office of the Comptroller of the Currency;
(C) the Board of Directors of the Federal Deposit Insurance Corporation;
(D) the Director of the Office of Thrift Supervision;
(E) the National Credit Union Administration Board; and
(F) the Securities and Exchange Commission.

**(3) Financial institution**

**(A) In general**

The term "financial institution" means any institution the business of which is engaging in financial activities as described in section 1843(k) of title 12.

**(B) Persons subject to CFTC regulation**

Notwithstanding subparagraph (A), the term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.].

**(C) Farm credit institutions**

Notwithstanding subparagraph (A), the term "financial institution" does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(D) Other secondary market institutions**

Notwithstanding subparagraph (A), the term "financial institution" does not include institutions chartered by Congress specifically to engage in transactions described in section 6802(e)(1)(C) of this title, as long as such institutions do not sell or transfer nonpublic personal information to a nonaffiliated third party.

**(4) Nonpublic personal information**

(A) The term "nonpublic personal information" means personally identifiable financial information—
(i) provided by a consumer to a financial institution;
(ii) resulting from any transaction with the consumer or any service performed for the consumer; or
(iii) otherwise obtained by the financial institution.

(B) Such term does not include publicly available information, as such term is defined by the regulations prescribed under section 6804 of this title.

(C) Notwithstanding subparagraph (B), such term—

(i) shall include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any nonpublic personal information other than publicly available information; but

(ii) shall not include any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived without using any nonpublic personal information.

**(5) Nonaffiliated third party**

The term "nonaffiliated third party" means any entity that is not an affiliate of, or related by common ownership or affiliated by corporate control with, the financial institution, but does not include a joint employee of such institution.

**(6) Affiliate**

The term "affiliate" means any company that controls, is controlled by, or is under common control with another company.

**(7) Necessary to effect, administer, or enforce**

The term "as necessary to effect, administer, or enforce the transaction" means—

(A) the disclosure is required, or is a usual, appropriate, or acceptable method, to carry out the transaction or the product or service business of which the transaction is a part, and record or service or maintain the consumer's account in the ordinary course of providing the financial service or financial product, or to administer or service benefits or claims relating to the transaction or the product or service business of which it is a part, and includes—

(i) providing the consumer or the consumer's agent or broker with a confirmation, statement, or other record of the transaction, or information on the status or value of the financial service or financial product; and

(ii) the accrual or recognition of incentives or bonuses associated with the transaction that are provided by the financial institution or any other party;

(B) the disclosure is required, or is one of the lawful or appropriate methods, to enforce the rights of the financial institution or of other persons engaged in carrying out the financial transaction, or providing the product or service;

(C) the disclosure is required, or is a usual, appropriate, or acceptable method, for insurance underwriting at the consumer's request or for reinsurance purposes, or for any of the following purposes as they relate to a consumer's insurance: Account administration, reporting, investigating, or preventing fraud or material misrepresentation, processing premium payments, processing insurance claims, administering insurance benefits (including utilization review activities), participating in research projects, or as otherwise required or specifically permitted by Federal or State law; or

(D) the disclosure is required, or is a usual, appropriate or acceptable method, in connection with—

(i) the authorization, settlement, billing, processing, clearing, transferring, reconciling, or collection of amounts charged, debited, or otherwise paid using a debit, credit or other payment card, check, or account number, or by other payment means;

(ii) the transfer of receivables, accounts or interests therein; or

(iii) the audit of debit, credit or other payment information.

**(8) State insurance authority**

The term "State insurance authority" means, in the case of any person engaged in providing insurance, the State insurance authority of the State in which the person is domiciled.

**(9) Consumer**

The term "consumer" means an individual who obtains, from a financial institution, financial products or services which are to be used primarily for personal, family, or household purposes, and also means the legal representative of such an individual.

**(10) Joint agreement**

The term "joint agreement" means a formal written contract pursuant to which two or more financial institutions jointly offer, endorse, or sponsor a financial product or service, and as may be further defined in the regulations prescribed under section 6804 of this title.

**(11) Customer relationship**

The term "time of establishing a customer relationship" shall be defined by the regulations prescribed under section 6804 of this title, and shall, in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer.

(Pub. L. 106–102, title V, §509, Nov. 12, 1999, 113 Stat. 1443.)

### Editorial Notes

## References in Text

This subchapter, referred to in text, was in the original "this subtitle", meaning subtitle A (§§501–510) of title V of Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1436, which is classified principally to this subchapter. For complete classification of subtitle A to the Code, see Tables.

The Commodity Exchange Act, referred to in par. (3)(B), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (3)(C), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.

**SUBCHAPTER II—FRAUDULENT ACCESS TO FINANCIAL INFORMATION**

# §6821. Privacy protection for customer information of financial institutions

**(a) Prohibition on obtaining customer information by false pretenses**

It shall be a violation of this subchapter for any person to obtain or attempt to obtain, or cause to be disclosed or attempt to cause to be disclosed to any person, customer information of a financial institution relating to another person —

(1) by making a false, fictitious, or fraudulent statement or representation to an officer, employee, or agent of a financial institution;

(2) by making a false, fictitious, or fraudulent statement or representation to a customer of a financial institution; or

(3) by providing any document to an officer, employee, or agent of a financial institution, knowing that the document is forged, counterfeit, lost, or stolen, was fraudulently obtained, or contains a false, fictitious, or fraudulent statement or representation.

**(b) Prohibition on solicitation of a person to obtain customer information from financial institution under false pretenses**

It shall be a violation of this subchapter to request a person to obtain customer information of a financial institution, knowing that the person will obtain, or attempt to obtain, the information from the institution in any manner described in subsection (a).

**(c) Nonapplicability to law enforcement agencies**

No provision of this section shall be construed so as to prevent any action by a law enforcement agency, or any officer, employee, or agent of such agency, to obtain customer information of a financial institution in connection with the performance of the official duties of the agency.

**(d) Nonapplicability to financial institutions in certain cases**

No provision of this section shall be construed so as to prevent any financial institution, or any officer, employee, or agent of a financial institution, from obtaining customer information of such financial institution in the course of—

(1) testing the security procedures or systems of such institution for maintaining the confidentiality of customer information;

(2) investigating allegations of misconduct or negligence on the part of any officer, employee, or agent of the financial institution; or

(3) recovering customer information of the financial institution which was obtained or received by another person in any manner described in subsection (a) or (b).

**(e) Nonapplicability to insurance institutions for investigation of insurance fraud**

No provision of this section shall be construed so as to prevent any insurance institution, or any officer, employee, or agency of an insurance institution, from obtaining information as part of an insurance investigation into criminal activity, fraud, material misrepresentation, or material nondisclosure that is authorized for such institution under State law, regulation, interpretation, or order.

**(f) Nonapplicability to certain types of customer information of financial institutions**

No provision of this section shall be construed so as to prevent any person from obtaining customer information of a financial institution that otherwise is available as a public record filed pursuant to the securities laws (as defined in section 78c(a)(47) of this title).

**(g) Nonapplicability to collection of child support judgments**

No provision of this section shall be construed to prevent any State-licensed private investigator, or any officer, employee, or agent of such private investigator, from obtaining customer information of a financial institution, to the extent reasonably necessary to collect child support from a person adjudged to have been delinquent in his or her obligations by a Federal or State court, and to the extent that such action by a State-licensed private investigator is not unlawful under any other Federal or State law or regulation, and has been authorized by an order or judgment of a court of competent jurisdiction.

(Pub. L. 106–102, title V, §521, Nov. 12, 1999, 113 Stat. 1446.)

# §6822. Administrative enforcement

**(a) Enforcement by Federal Trade Commission**

Except as provided in subsection (b), compliance with this subchapter shall be enforced by the Federal Trade Commission in the same manner and with the same power and authority as the Commission has under the Fair Debt Collection Practices Act [15 U.S.C. 1692 et seq.] to enforce compliance with such Act.

**(b) Enforcement by other agencies in certain cases**

**(1) In general**

Compliance with this subchapter shall be enforced under—

(A) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], in the case of—

(i) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

(ii) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.], by the Board;

(iii) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System and national nonmember banks) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation; and

(iv) savings associations the deposits of which are insured by the Federal Deposit Insurance Corporation, by the Director of the Office of Thrift Supervision; and

(B) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union.

**(2) Violations of this subchapter treated as violations of other laws**

For the purpose of the exercise by any agency referred to in paragraph (1) of its powers under any Act referred to in that paragraph, a violation of this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in paragraph (1), each of the agencies referred to in that paragraph may exercise, for the purpose of enforcing compliance with this subchapter, any other authority conferred on such agency by law.

(Pub. L. 106–102, title V, §522, Nov. 12, 1999, 113 Stat. 1447.)

### Editorial Notes

## References in Text

The Fair Debt Collection Practices Act, referred to in subsec. (a), is title VIII of Pub. L. 90–321, as added by Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 874, which is classified generally to subchapter V (§1692 et seq.) of chapter 41 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 1601 of this title and Tables.

Section 25 of the Federal Reserve Act, referred to in subsec. (b)(1)(A)(ii), is classified to subchapter I (§601 et seq.) of chapter 6 of Title 12, Banks and Banking. Section 25A of the Federal Reserve Act is classified to subchapter II (§611 et seq.) of chapter 6 of Title 12.

The Federal Credit Union Act, referred to in subsec. (b)(1)(B), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

### Statutory Notes and Related Subsidiaries

## Transfer of Functions

Functions vested in Administrator of National Credit Union Administration transferred and vested in National Credit Union Administration Board pursuant to section 1752a of Title 12, Banks and Banking.

## §6823. Criminal penalty

**(a) In general**

Whoever knowingly and intentionally violates, or knowingly and intentionally attempts to violate, section 6821 of this title shall be fined in accordance with title 18 or imprisoned for not more than 5 years, or both.

**(b) Enhanced penalty for aggravated cases**

Whoever violates, or attempts to violate, section 6821 of this title while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) or (c)(3) (as the case may be) of section 3571 of title 18, imprisoned for not more than 10 years, or both.

(Pub. L. 106–102, title V, §523, Nov. 12, 1999, 113 Stat. 1448.)

## §6824. Relation to State laws

**(a) In general**

This subchapter shall not be construed as superseding, altering, or affecting the statutes, regulations, orders, or interpretations in effect in any State, except to the extent that such statutes, regulations, orders, or interpretations are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency.

**(b) Greater protection under State law**

For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this subchapter if the protection such statute, regulation, order, or interpretation affords any person is greater than the protection provided under this subchapter as determined by the Federal Trade Commission, after consultation with the agency or authority with jurisdiction under section 6822 of this title of either the person that initiated the complaint or that is the subject of the complaint, on its own motion or upon the petition of any interested party.

(Pub. L. 106–102, title V, §524, Nov. 12, 1999, 113 Stat. 1448.)

## §6825. Agency guidance

In furtherance of the objectives of this subchapter, each Federal banking agency (as defined in section 1813(z) of title 12), the National Credit Union Administration, and the Securities and Exchange Commission or self-regulatory organizations, as appropriate, shall review regulations and guidelines applicable to financial institutions under their respective jurisdictions and shall prescribe such revisions to such regulations and guidelines as may be necessary to ensure that such financial institutions have policies, procedures, and controls in place to prevent the unauthorized disclosure of customer financial information and to deter and detect activities proscribed under section 6821 of this title.

(Pub. L. 106–102, title V, §525, Nov. 12, 1999, 113 Stat. 1448.)

## §6826. Reports

**(a) Report to the Congress**

Before the end of the 18-month period beginning on November 12, 1999, the Comptroller General, in consultation with the Federal Trade Commission, Federal banking agencies, the National Credit Union Administration, the Securities and Exchange Commission, appropriate Federal law enforcement agencies, and appropriate State insurance regulators, shall submit to the Congress a report on the following:

(1) The efficacy and adequacy of the remedies provided in this subchapter in addressing attempts to obtain financial information by fraudulent means or by false pretenses.

(2) Any recommendations for additional legislative or regulatory action to address threats to the privacy of financial information created by attempts to obtain information by fraudulent means or false pretenses.

**(b) Annual report by administering agencies**

The Federal Trade Commission and the Attorney General shall submit to Congress an annual report on number and disposition of all enforcement actions taken pursuant to this subchapter.

(Pub. L. 106–102, title V, §526, Nov. 12, 1999, 113 Stat. 1448.)

## §6827. Definitions

For purposes of this subchapter, the following definitions shall apply:

**(1) Customer**

The term "customer" means, with respect to a financial institution, any person (or authorized representative of a person) to whom the financial institution provides a product or service, including that of acting as a fiduciary.

**(2) Customer information of a financial institution**

The term "customer information of a financial institution" means any information maintained by or for a financial institution which is derived from the relationship between the financial institution and a customer of the financial institution and is identified with the customer.

**(3) Document**

The term "document" means any information in any form.

**(4) Financial institution**

**(A) In general**

The term "financial institution" means any institution engaged in the business of providing financial services to customers who maintain a credit, deposit, trust, or other financial account or relationship with the institution.

**(B) Certain financial institutions specifically included**

The term "financial institution" includes any depository institution (as defined in section 461(b)(1)(A) of title 12), any broker or dealer, any investment adviser or investment company, any insurance company, any loan or finance company, any credit card issuer or operator of a credit card system, and any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis (as defined in section 1681a(p) of this title).

**(C) Securities institutions**

For purposes of subparagraph (B)—

(i) the terms "broker" and "dealer" have the same meanings as given in section 78c of this title;
(ii) the term "investment adviser" has the same meaning as given in section 80b–2(a)(11) of this title; and
(iii) the term "investment company" has the same meaning as given in section 80a–3 of this title.

**(D) Certain persons and entities specifically excluded**

The term "financial institution" does not include any person or entity with respect to any financial activity that is subject to the jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act [7 U.S.C. 1 et seq.] and does not include the Federal Agricultural Mortgage Corporation or any entity chartered and operating under the Farm Credit Act of 1971 [12 U.S.C. 2001 et seq.].

**(E) Further definition by regulation**

The Federal Trade Commission, after consultation with Federal banking agencies and the Securities and Exchange Commission, may prescribe regulations clarifying or describing the types of institutions which shall be treated as financial institutions for purposes of this subchapter.

(Pub. L. 106–102, title V, §527, Nov. 12, 1999, 113 Stat. 1449.)

## Editorial Notes

## References in Text

The Commodity Exchange Act, referred to in par. (4)(D), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

The Farm Credit Act of 1971, referred to in par. (4)(D), is Pub. L. 92–181, Dec. 10, 1971, 85 Stat. 583, which is classified generally to chapter 23 (§2001 et seq.) of Title 12, Banks and Banking. For complete classification of this Act to the Code, see Short Title note set out under section 2001 of Title 12 and Tables.